**In the ESTATE OF Frank John GULAT, Deceased.**

**No. 53373.**

Missouri Court of Appeals, Eastern District, Division One.

April 12, 1988.

Kurt D. Breeze, Hillsboro, for appellant.

Joe A. Johnson, Arnold, for respondent.

REINHARD, Judge.

Goldie Layton, niece of decedent Frank John Gulat, appeals from an order of the probate court imposing a constructive trust on $20,000 in her possession for the benefit of the devisees and ordering her to deliver the money to the personal representative of the estate. We affirm.

The record here reveals that Frank John Gulat died on March 20, 1986. Thereafter, his will, which had been executed on October 23, 1985, was admitted to probate. All of his estate was left in equal shares to nine people. Among them were seven of his nieces and nephews, including Mrs. Layton. Another devisee, decedent's nephew Earl Taubold, was named personal representative.

On April 17, 1986, the personal representative filed a motion and affidavit to discover assets, alleging Mrs. Layton "has assets in her possession or control received by her in trust for the benefit of the heirs named in Decedent's Will, including: ... $20,000 cash received by decedent in the sale of his home in Sulphur Springs, Missouri."

Mrs. Layton answered "that she has no assets in her possession which are held in Trust or otherwise, for the benefit of any heirs of decedent." She further alleged the motion failed to state a cause of action and moved for dismissal or for more definite statement.

The court granted the motion for more definite statement, and an amended motion to discover assets was filed. A second amended motion was filed after Mrs. Layton moved to dismiss the amended motion for failure to state a claim upon which relief can be granted. In the second amended motion the personal representative alleged that decedent had $20,000 in cash in a safe deposit box at Farmers Bank in Imperial, Missouri, on February 26, 1986; that this money was from the sale of decedent's house; that Mrs. Layton was a "co-owner" of the safe deposit box; and that because of decedent's confidence in Mrs. Layton an equitable obligation was "implied" for her to hold the property for the heirs of the estate. The petition then prayed for the court to "establish a constructive Trust in Goldie Layton for the benefit of the heirs named in Decedent's Will." The court denied the motion to dismiss, and the case was submitted to the court solely on the issue of imposing a constructive trust.

Aside from bank records, Mrs. Layton's deposition was the only testimony the court considered. The evidence revealed the decedent had rented the box originally in January 1985 and had named Mrs. Layton's husband as co-renter. After Mr. Layton died in March 1985, Mrs. Layton's name was added as co-renter of the box, and she remained a co-renter at the time of decedent's death. The source of the $20,000 in the box was decedent's proceeds from the sale of his house in November 1985.

Prior to the sale of the house, the Laytons would visit decedent frequently. After the house was sold decedent stayed with Mrs. Layton for about six months, until a week prior to his death when he moved into a nursing home. Mrs. Layton was co-owner of a savings account with decedent and had a key to the safe deposit box, but she was not named on decedent's certificates of deposit or other bank accounts. Subsequent to the sale of decedent's house, Mrs. Layton drove decedent to Farmers Bank the day he deposited the

$20,000 into the safe deposit box, but she did not participate in the deposit. She did not open the box until after decedent died, when she removed the cash from the box.

The court imposed a constructive trust in favor of the heirs named in decedent's will and ordered Mrs. Layton to deliver to the personal representative the $20,000, which the court found to be an asset of the estate. In its order the court stated,

> the Court finds from the evidence that a Confidential Relationship existed between Decedent and Goldie Layton, his niece, with whom he lived; that during his lifetime, decedent exercised full dominion and control over the safe deposit box in question and that Goldie Layton had never seen the contents of such safe deposit box and did not know the contents thereof, and, unity of possession of such assets never occurred.

On appeal, Mrs. Layton raises one issue, contending the court erred in sustaining the motion for discovery of assets and in imposing a constructive trust on the assets in her possession because "said funds were validly held in joint ownership with decedent with right of survivorship, and that an essential element of a constructive trust, to-wit: fraud, was neither pleaded nor proven."

In reviewing a judgment of the trial court, we will affirm unless there is no substantial evidence to support the judgment, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Estate of Ferling*, 670 S.W.2d 109, 110 (Mo.App. 1984). The trial court's judgment will be affirmed if it is correct on any reasonable theory supported by the evidence. *Ferling*, 670 S.W.2d at 110.

By statutory provision a joint tenancy of co-depositors of a bank account can be created. The survivor of such a joint tenancy is entitled to a presumption that the account was held in joint tenancy. § 362.470, RSMo.1986; *see Ferling*, 670 S.W.2d at 113. On the contrary, no presumption of a joint tenancy exists in the contents of a safe deposit box. § 362.487, RSMo.1986;

*see* 48A C.J.S. *Joint Tenancy* § 11. Section 362.487 states, "No presumption of ownership of the contents of any such box shall be deemed created by the rental contract."

█ The evidence indicated Mrs. Layton and decedent were *co-renters* of the safe deposit box and the $20,000 decedent placed in the box constituted the proceeds from the sale of his home. There is no evidence in the record anyone other than decedent had an ownership interest in the money. The fact Mrs. Layton was co-renter of the box does not show that a joint tenancy was created in the contents of the box or that she had any interest in the money decedent placed in the box.

█ Mrs. Layton relies solely upon two cases which hold that in order to establish a constructive trust there must be proof of either actual fraud or constructive fraud. *White v. Mulvania*, 575 S.W.2d 184, 187 (Mo. banc 1978); *Murphy v. Olds*, 508 S.W.2d 249, 252 (Mo.App.1974). We agree there was insufficient evidence here to support either a fraud or constructive fraud theory. We conclude, however, that fraud and constructive fraud are not the only grounds for imposition of a constructive trust. In *Swon v. Huddleston*, 282 S.W.2d 18, 25 (Mo.1955), the supreme court stated the following:

> There are many, and somewhat confusing, definitions of a constructive trust, and some confusion as to the constituent elements. Many cases say that such a trust must be based on fraud, actual or constructive. *Beach v. Beach*, Mo., 207 S.W.2d 481; *Parker v. Blakeley*, 338 Mo. 1189, 93 S.W.2d 981; *Lucas v. Central Missouri Trust Co.*, 350 Mo. 593, 166 S.W.2d 1053; *Gates Hotel Co. v. C R H Davis Real Estate Co.*, 331 Mo. 94, 52 S.W.2d 1011. Some apparently proceed upon the theory of unjust enrichment or of an unfair or wrongful holding, without any proof of fraudulent intent. *Wier v. Kansas City*, 356 Mo. 882, 204 S.W.2d 268; *Lucas v. Central Missouri Trust Co.*, 350 Mo. 593, 166 S.W.2d 1053, loc. cit. 1057; Vol. 3, Scott on Trusts, § 462, pp. 2314–2316; in one very recent case,

*Decker v. Fittge,* [365] Mo. [139], 276 S.W.2d 144, this court declared a constructive trust in the following language: "He held the title represented by the $2,477.97 payment as a constructive trustee for plaintiff. This, as has been stated, is not necessarily because of an imputation of fraud, but because to permit him to retain the property thus procured would tend to induce fraud and would be against public policy upon the true owner doing equity. *Van Raalte v. Epstein,* 202 Mo. 173, 192, 99 S.W. 1077, 1081."

*Accord Hoefel v. Hoefel,* 533 S.W.2d 704, 709 (Mo.App.1976). While there is no evidence in the present case of actual or constructive fraud, there is evidence of a relationship between decedent and Mrs. Layton, and, as a result of this relationship, she was able to take possession of the $20,000. We believe the evidence fully supports the trial court's determination there was never any unity of possession of the contents of the box between decedent and Mrs. Layton sufficient to create a joint tenancy in the cash and the trial court's implicit conclusion decedent owned the $20,000 in the safe deposit box. Mrs. Layton's continued possession of the money, which was an asset of decedent's estate, unjustly enriched her to the detriment of decedent's other devisees. The personal representative properly sought to discover and recover that money as an asset of the estate pursuant to § 473.340.1, RSMo 1986. Under that statute the trial court was authorized to determine who had interests in the property and the nature and extent of those interests, and the court could direct Mrs. Layton to deliver the money to the person entitled to it, the personal representative of the estate. § 473.340.3, RSMo 1986. Therefore, the trial court did not err in declaring the money to be an asset of the estate, in imposing a constructive trust on the money in the possession of Mrs. Layton, and in ordering her to deliver it to the personal representative.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.