Sara Louise IMGRUND, et al., Plaintiffs/Respondents,

v.

**Betty J. LARUE, Defendant/Appellant.**

**No. 61958.**

Missouri Court of Appeals, Eastern District, Division Two.

March 30, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1993.

---

Donald S. Hilleary, Clayton, for defendant/appellant.

Sara Imgrund, pro se.

Janiva Magness, pro se.

Carson Magness, pro se.

**PUDLOWSKI, Judge.**

Defendant-appellant, Betty J. LaRue, appeals a judgment of the Circuit Court of St. Louis County imposing a constructive trust in favor of plaintiffs, Sara Imgrund, Janiva Magness and Carson Magness. Appellant asserts six points of error on appeal. First, appellant asserts that because the court's decree was outside of the scope of the pleadings, it is invalid. Second, appellant argues that the court's finding that appellant was in a confidential relationship with respondents was not supported by clear, cogent and convincing evidence. Third, appellant urges that Carson Magness did not have standing to sue under the life insurance policy because under the terms of the policy Carson was only an incidental beneficiary. Fourth, appellant asserts Carson Magness fails to state a claim for relief under a theory of false representation because he did not allege that he was the hearer of false representations made by appellant. Fifth, appellant urges that the statute of limitations bars claims made by Sara Imgrund and Janiva Magness. Finally, appellant alleges that defendants did not use due diligence in discovering the details of insurance benefits that might be due them. We affirm.

Billy C. Magness was employed by the John Hancock Mutual Life Insurance Company. On July 12, 1972, John Hancock issued a life insurance policy to Magness which entitled his three youngest children to survivor benefits of $52.40 per month until each child reached the age of twenty-three. Magness committed suicide on March 20, 1973 and his minor children were entitled to begin collecting the monthly fees beginning April 1, 1973. Based on the children's age multiplied by the monthly amount minus certain costs, the trial court determined that Sara Imgrund, Carson Magness and Janiva Magness were entitled to $1,358, $6,283.60 and $3,296.80 respectively.

At the time of his death, Magness lived with his second wife, appellant, and his youngest child Carson. After Magness' death, appellant wrapped up his affairs including ascertaining and collecting life insurance policies. On May 3, 1973, appellant signed a claim form which required information concerning the surviving children. She had previously delivered the birth certificates of the three children to John Hancock at the request of Billy Magness' supervisor Don Tobin. When appellant delivered the birth certificates, Tobin informed her that the three children would be entitled to survivor benefits under the life insurance policy.

Under the assumption that their father had life insurance for them, the children called appellant in April 1973 asking her for information on the policies. At that time, appellant admitted that there were certain policies with Carson as the named beneficiary but denied the existence of the benefits at issue in this case. Appellant sent the policies naming Carson as beneficiary to Sara Imgrund who had taken custody of Carson after their father's death. In 1981, Carson asked appellant whether there were any other survivor benefits, and appellant again denied the existence of the benefits. In June 1973, appellant, aware of the schedule of survivor benefits to be paid to herself and the children, made no effort to contact the children, notwithstanding their earlier requests. Appellant began to receive the survivor benefits which the children were entitled to on or about that date.

The trial court found that each of the children exercised due diligence in trying to discover the fraud concerning the survivor income benefits. In addition to repeated entreaties to appellant about the existence of survivor benefits, Janiva Magness contacted George Dritsas, a John Hancock employee and family friend, about the existence of survivor benefits and Dritsas said he knew of no benefits to which the children were entitled. Sara Imgrund sent two letters to John Hancock requesting information regarding life insurance poli-

cies on her father. John Hancock replied that they could not divulge the information without the consent of the named beneficiary—i.e. appellant. Sara did not contact LaRue and request her permission.

On September 16, 1985, the three children were first informed of the existence of survivor income insurance benefits which had been withheld from them by their stepmother. They brought suit to recover the proceeds. On February 4, 1992, the trial court found in favor of the children and entered a judgement for the amounts listed above. The trial court determined that appellant had unfairly acquired and appropriated life insurance benefits that belonged to the children. The court also determined that appellant had knowingly represented to each of the children that there were no life insurance benefits when she knew this to be untrue. The court imposed a constructive trust in favor of the children and ordered an accounting. Appellant appeals the judgment of the trial court.

Additional facts will be developed as necessary.

Our standard of review is determined by Rule 73.01. We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence or it misapplies or misinterprets the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In her first point on appeal, appellant argues that the declaration of a constructive trust in favor of the children was contrary to the theory on which the petition was based in that the petition plead detrimental reliance on false allegations and the court based the imposition of the constructive trust on a breach of a fiduciary relationship. The Supreme Court of Missouri addresses the issue as follows:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after the judgment; but failure so to amend does not affect the result of the trial of these issues.

Rule 55.33(b). See also *Iota Management v. Boulevard Inv. Co.*, 731 S.W.2d 399, 415 (Mo.App.1987) citing *Pike v. Pike*, 609 S.W.2d 397, 400 (Mo. banc 1980) (providing that variance without objection between pleading and proof, especially in court tried cases, shall be immaterial and the pleadings shall be deemed to conform to the proof).

■ The evidence supported a finding of a breach of a confidential relationship and the pleadings are deemed amended in as much as they were based on a theory of false representation. In her brief, appellant quotes an objection by her counsel to having the pleadings amended by consent. This objection was directed at the inclusion in the theory of the case of false representations made to another member of the Magness family who was not a party to the suit. The objection was not directed to the issue on appeal. Point denied.

In her second point, appellant argues that the trial court erred in declaring a constructive trust because there was not clear, cogent and convincing evidence appellant was in a dominant and confidential relationship with the children. In support of this point, appellant suggests that since none of the children lived with her at the time she made the misrepresentations no confidential relationship existed.[1] Appellant assumes that the confidential relationship necessary to form a constructive trust is coextensive with that required in a formal fiduciary relationship. We disagree.

■ A constructive trust[2] is a method or formula used by a court of equity as a

---

1. Carson may have lived briefly with appellant after his father's death, however, he soon moved to his sister's residence in Minnesota.

2. Constructive trusts are technically not trusts at all, but rather, are equitable devices employed by courts of equity to remedy a situation where a party has been wrongfully deprived of some right, title or interest in property as a result of

means of affecting restitution or of rectifying a situation where, as the result of the violation of confidence or faith reposed in another, the plaintiff who seeks the aid of equity, has been wrongfully deprived of or lost title. *Neal v. Sparks*, 773 S.W.2d 481, 486 (Mo.App.1989). Constructive trusts can be based on either real or constructive fraud. *Id.* One of the requirements for a constructive trust is the existence of a "confidential relationship." A confidential relationship is generally synonymous with a fiduciary relationship. *Crane v. Centerre Bank of Columbia*, 691 S.W.2d 423, 428 (Mo.App.1985). However, the relationship need not be technically fiduciary but may be merely informal. *Id.*

 There is some confusion over the exact nature of the confidential relationship required for a constructive trust; due in part to the varying circumstances under which the constructive trust remedy is employed. In situations where plaintiffs seek to set aside a transaction using a constructive trust as a device, a common allegation is that the defendant had undue influence over the grantor. See e.g. *Crane v. Centerre Bank of Columbia*, 691 S.W.2d 423, 428 (Mo.App.1985); *Kay v. Kay*, 763 S.W.2d 712, 714 (Mo.App.1989). In cases of this nature, plaintiffs must prove that defendant had coercive influence on the grantor which is greater than that of a regular family relationship. The result of this type of case is language such as "[a] confidential relationship is usually found 'when the person in whom confidence is reposed had either control or influence over at least a portion of the transferor's property, finances or business affairs.' " *Kay*, 763 S.W.2d at 714 (citation omitted). The instant case does not concern allegations of undue influence over a grantor or testator. As a result, defining a confidential relationship with such language is not warranted here. Rather a confidential relationship, under the facts of this case, may be inferred from the relationship between the parties with respect to the life insurance issue—i.e. appellant had sole control over

the proceeds of the policy and sole knowledge of the existence of the proceeds and without the necessity of proving undue influence or a technical fiduciary relationship.

Instead of a remedy to set aside a transfer of property on the grounds of undue influence, a constructive trust is best understood as an equitable remedy used in a variety of circumstances to set aside wrongful ownership gained through real or constructive fraud.

> Constructive trusts do not, like express trusts and resulting trusts, "arise by virtue of agreement or intention, either actual or implied, but by operation of law, or, more accurately, by construction of the court, regardless" and independently of any actual or presumed intention of the parties to create a trust. It is said, "Fraud, either actual or constructive, is the very foundation" of constructive trusts "which are accordingly called, by those who delight in garnering expressions from the ripened fields of the classical languages, " 'trusts maleficio.' " They are not technical trusts and in imposing or declaring a constructive trust a court of equity merely uses the machinery of a trust to prevent fraud or provide a remedy in cases of fraud, actual or constructive, by making the person who has wrongfully acquired property, or has acquired property under such circumstances as make it inequitable for him to retain it, a trustee for the person defrauded or injured by such fraudulent or wrongful conduct. (citations omitted)

*Suhre*, 123 S.W.2d at 15.

In the instant case, appellant knowingly misrepresented the existence of life insurance policies to their rightful owners. Appellant was in sole possession of the policies and the three entitled children, who were all minors at the time of the inquiries, had no other known route to determine the existence of the policy. They had contacted a family friend who worked at John Hancock and had written John Hancock directly but could not ascertain from those

---

fraud or violation of confidence or faith reposed in another. *Schultz v. Schultz*, 637 S.W.2d 1, 4 (Mo. banc 1982); *Suhre v. Busch*, 343 Mo. 679, 123 S.W.2d 8, 15 (1938).

sources whether a policy existed or not. That the children were forced to place their faith in their father's widow is clear from the evidence before us. Equally clear is appellant's violation of that trust in denying the existence of life insurance for the children. The confidence necessarily placed in appellant satisfies the confidential relationship required in the constructive trust remedy.

■ In her third point on appeal, appellant asserts that Carson Magness cannot maintain an action against her because he was not the designated payee under the life insurance policy. Appellant contends that the life insurance policy directs payment be made to those financially responsible for the minor child who appellant contends were Sara Imgrund and her husband. In 1973, Carson was approximately nine years old and lived with his sister, Sara Imgrund, and her husband in Minnesota. In support of her argument, appellant cites a child support case. Appellant mischaracterizes the nature of the insurance payment which was due to Carson or those financially responsible for him. The disputed clause provides in part:

> (2) If there is no surviving spouse, or if the Company determines that some person other than the surviving spouse is financially responsible for the qualified children, the sum of the benefits payable with respect to qualified children for a given month shall be paid in one sum to the person whom the Company determines is financially responsible for such children for that month....

That the company never determined who was financially responsible for Carson Magness is clearly demonstrated by the continued payment of the benefits to appellant. Appellant, as surviving spouse, was entitled to the payments which were to be used to benefit Carson. Carson's interest in the payments was real and that he was deprived of their benefits was not denied by appellant. Carson has proper standing to recover the proceeds.

In her fourth point, appellant claims that Carson Magness is not entitled to recover under a theory of fraudulent representation because he allegedly did not plead all of the elements in the third count of re-

spondents' petition. We refer appellant to the discussion of the first point and Rule 55.33(b).

■ In her fifth point, appellant claims that respondents Sara Imgrund and Janiva Magness are barred by the statute of limitations because respondents discovered the false representations in 1973 or 1974. In the case of a breach of a constructive trust, the ten year statute of limitations of § 516.010, RSMo 1986, does not begin to run until the date upon which the trustee repudiates the trust. *Rajanna v. KRR Investments, Inc.*, 810 S.W.2d 548, 550 (Mo.App.1991). A constructive trust is repudiated when the beneficiaries discover the wrongful appropriation and demand return of the property so long as they had no other reasonable means of discovering the existence of the missing or misappropriated property. See *id.; Schoenberg v. Schoenberg*, 615 S.W.2d 111, 115 (Mo.App.1981). In the instant case, the ten year statute of limitations began to run on September 16, 1985, when the children were first informed of the existence of the funds which appellant had consistently represented had not existed. Point denied.

■ In her final point on appeal, appellant contends that the children did not exercise due diligence in discovering the fraud which appellant committed on them. We disagree. The children requested that appellant disclose the existence of life insurance policies. Additionally, the children wrote John Hancock requesting life insurance information on their father and were told that they needed appellant's permission if the information was to be released. Finally, the children asked a family friend who worked at John Hancock about the existence of the policies and were told that there were none. The children exercised due diligence.. Point denied.

The judgment of the trial court is affirmed.

CRANDALL, P.J., and GRIMM, J., concur.