**In the ESTATE OF Violet E. DAVIS, an incapacitated and/or disabled person.**

**Andrew J. KOHM, et al.,
Plaintiff–Appellant,**

v.

**Blane D. KOHM, et al., Respondent–
Respondent.**

**No. 70116.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

July 29, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 22, 1997.

Application to Transfer Denied Nov. 25, 1997.

---

Robert K. Angstead, Newman, Comley & Ruth, P.C., Jefferson City, for plaintiff–appellant.

David G. Beeson & Scott A. Kipke, Buerkle, Beeson, Ludwig, Wilson & Jackson, L.C., Jackson, for respondent John T. Bert.

Thomas L. Hoeh, Perryville, for respondent Blane D. Kohm.

KAROHL, Judge.

The subject of the dispute in this case is jointly owned assets of plaintiffs' aunt, Violet E. Davis (Davis), and defendant Blane D. Kohm (Kohm). In a court tried case the judgment favored defendant Kohm. The litigation began in November 1993 when two nieces and two nephews, interested in the guardianship estate of Davis "as intestate heirs" filed a petition to remove Kohm as guardian, and John T. Bert (Bert) as public-administrator-conservator for Davis. Four other counts were alleged to obtain the return of assets jointly owned by Davis and Kohm. Davis died March 18, 1996 during this appeal. Neither Davis nor her probate estate were made parties in the trial court. Plaintiffs-appellants filed a Motion to Substitute for Davis which we denied. The parties remain, two nieces and two nephews, as plaintiffs, and the guardian and the conservator of Davis, a disabled person, in their representative capacities, as defendants. They were not sued individually.

In a court tried case, we affirm the decree or judgment of the trial court upon factual matters unless their is no substantial evidence to support it or it is against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The evidence which supports the judgment is as follows.

In October of 1988, Davis, then age 83, was hospitalized with congestive heart failure. Davis' physician, Dr. Limpiphiphatn, released her upon the condition that someone would ensure she would take her medication. Her grand-nephew, Kohm, volunteered to do so because he liked Davis and "nobody seemed to want to do it." Davis was released from the hospital on October 18, 1988. Kohm suggested to Davis that she might consider getting a power of attorney "[b]ecause of her health, if she got sick again,

somebody would have to handle her affairs for her." She asked him "Who?" and Kohm responded, "Well, that's your choice." Davis had Francis Toohey, a licensed attorney, draft a power of attorney. He explained the purpose and the effects of the power of attorney to both Davis and Kohm. On October 28, 1988, Davis granted Kohm her power of attorney.

Over the next month, Davis retitled most of her assets in her name with Kohm, as joint tenants with right of survivorship. On November 23, 1992, the probate court appointed Kohm, as guardian, and Bert, as conservator for Davis. By November of 1992, the value of all the assets that were jointly owned by Davis and Kohm was approximately $200,000. Kohm never used his power of attorney to transfer "one penny's worth" of Davis' assets to a joint tenancy. Davis personally endorsed each of her assets that were transferred to joint accounts.

When Kohm began to assist Davis, he noticed that some of the beneficiaries named in Davis' will were dead. He suggested to her she might consider a new will. Davis' brothers and sisters; who were beneficiaries under the old will, were dead. Around November 15, 1988 Davis destroyed her old will and executed a new one. No copy of the old will was produced at trial.[1] Kohm testified that under the old will the nieces and nephews and two grand-nephews were to receive $500 each.

The new will was also not produced at trial. A copy of it has been furnished to this court as an attachment to Appellants' Motion to Substitute Parties. Paragraph 4 directs:

I give and bequeath a sum not to exceed $600.00 from the proceeds of the sale of personal property, savings bonds and savings equally to the following: one share to my nephew, Donald M. Cissell; one share to my niece, Donna Jean Rinklin; one share to my nephew, Russell W. Cissell; one share to my niece, Sandra Cissell; one share to my niece, Georgia Lee Rawlings; one share to my grand-nephew, Sidney R.

---

1. The validity of her wills was not an issue in the trial. Davis was still living at the time of trial.

She died during this appeal.

Rawlings; one share to my grand-nephew, Michael S. Rawlings; one share to my niece, Nina Ruth Parres; one share to my nephew, Andrew J. Kohm, Jr.; one share to Zita M. Marshall; one share to be shared equally by Mr. and Mrs. Julian Breland; one share Geneva Terrell....

The bequests for plaintiffs were larger in the new will than in the former will. Paragraph 4 also contained an anti-lapse clause.

Under the new will Davis bequeathed to Kohm her residence, an antique desk, coffee table, lamp table, a "Baldor Electric Grinder", and the residue of her property. She omitted two nephews from the new will, Paul, Sr.[2] and Mike Cissell. She explained and detailed rational reasons for omitting them. Her explanations tend to support a finding she was mentally alert.

Four years later, Kohm was concerned for Davis' safety if she continued to live alone. On October 19, 1992, Kohm filed a petition seeking the appointment of a guardian and conservator for Davis. Davis went into the nursing home before the competency hearing. Attorney Toohey represented Kohm at the competency hearing. Prior to October 16, 1992 Davis lived alone, cooked her own meals, did her own laundry and prepared shopping lists.

In his petition, Kohm estimated the value of Davis' real property to be $30,000 and her personal property to be $1,200. At the competency hearing on November 23, 1992 Kohm testified it was his understanding that all the assets he held jointly with Davis actually belonged to Davis. He explained his failure to list the value of the jointly held assets was because he misunderstood his attorney's instructions. It was Kohm's intention that after Davis died, he would pay her bills and funeral expenses from the joint accounts. What remained of the jointly held assets would go to the persons named in the new will. He also testified he would not oppose a freeze order on all of the jointly titled assets until they could be retitled into Davis' sole name. The probate court found, "[t]here are substantial personal assets which were not even listed as joint property on the 'Application for Letters of Conservatorship / Guardianship' which are in fact the property of the ward / protectee although titled jointly with Blane Kohm." It ordered "that any assets on which the ward / protectee is listed as a joint owner ... are hereby ordered frozen until further order of the Court ..." It also ordered Kohm be appointed Davis' guardian and Bert, Public Administrator, be appointed conservator of Davis' estate.

Two or three days after the guardianship hearing, Toohey told Kohm, "with [Davis] putting [his] name on the accounts, that that gave [him] an ownership right." Kohm told Toohey "if I'd have known that, I wouldn't have agreed in court to retitle everything."

Toohey represented Bert while he was serving as conservator of Davis' estate. Bert was unaware that Toohey had previously represented Kohm, Kohm's mother and Davis. He also did not know how Davis' assets came to be jointly held with Kohm. Bert selected Toohey to represent him because "whatever attorney is handling the estate of the people I take over, I try to stay with that attorney because he's familiar with the case."

Bert described his duties as conservator as taking care of the financial needs of an individual and any necessary legal problems that come up regarding guardianship. Throughout his service as conservator, Bert completed all work necessary to resolve the discovery of assets of Davis' estate. On February 9, 1993 Bert filed the "INVENTORY AND APPRAISEMENT" of Davis' estate. He contacted Kohm and requested the jointly held assets that Kohm had in his possession. Bert took possession of all of Davis' assets, including those jointly held with Kohm. To the best of Bert's knowledge, Kohm cooperated fully in making known to him all of the jointly held assets. Bert testified that he had continued to pay, on a monthly basis, Davis' nursing home and medical bills. He also sold Davis' house, pursuant to a court order and all of the personal belongings within the house.

Plaintiffs assert four points on appeal. They have not appealed the judgment denying their request to remove Kohm and Bert

2. Paul, Sr. is Kohm's father.

in their official duties. In their first point, they argue the trial court erred in refusing to impose a constructive trust over all assets jointly titled in Davis' and Kohm's names. They argue the overwhelming weight of uncontradicted evidence revealed Kohm committed a constructive fraud upon Davis by: (1) unduly influencing Davis; (2) breaching a confidential and fiduciary relationship; and, (3) being unjustly enriched. In a related argument, plaintiffs argue the trial court erred in granting judgment to Kohm and Bert on the basis they failed to meet their burden of proving Davis' incompetence prior to November 23, 1992.

■ The issue of plaintiffs' standing "as heirs" was not contested in the trial court. No motion was filed here to contest standing and the parties did not brief or argue the issue of standing. Under Section 472.160.1(14) RSMo 1994, a provision of the probate code, interested persons aggrieved by judgments are entitled to appeal final orders or judgments of the probate court. The probate code defines "interested persons" as:

> heirs, devisees, spouses, creditors or any others having a property right or claim against the *estate of a decedent* being administered and includes children of a protectee who may have a property right or claim against or an interest in the estate of a protectee. Section 472.010(15) RSMo 1994. (Our emphasis)

The guardianship statute, Section 475.020 RSMo 1994, adopts the applicability of the provisions of the probate code to guardianship actions. *Matter of Walker,* 875 S.W.2d 147, 149 (Mo.App. E.D.1994). It also provides the substitution of title description and equates the probate and guardianship estates unless there exists an inconsistent provision in the guardianship code. *Id.* Accordingly, while part of the definition of "interested persons" may be relevant to formulate the standing requirement in the guardianship code, other portions of this definition may not be applicable. *Id.* In *Matter of Walker,* we held a second cousin of a partially incapacitated protectee did not have standing to contest and appeal from a denial of his petition to be appointed guard-

ian and conservator because he was not an "interested person" in that he had no vested financial interest. *Id.* at 150–151. It is very doubtful plaintiffs-appellants have standing. This appeal could be dismissed on the issue of standing alone. However, assuming, without deciding, plaintiffs have standing, their claims of error have no merit.

■ Constructive trusts are technically not trusts at all. They are equitable devices employed by courts of equity to remedy a situation where a party has been wrongfully deprived of some right, title or interest in property as a result of fraud or violation of confidence or faith reposed in another. *Imgrund v. LaRue,* 851 S.W.2d 40, 43–44 [footnote 2] (Mo.App. E.D.1993). A constructive trust is best understood as an equitable remedy used in a variety of circumstances to set aside wrongful ownership gained through real or constructive fraud. *Id.* at 44. One circumstance where a court may impose a constructive trust is where the defendant had "undue influence" over the grantor. *Id.* Another is where the defendant breaches a confidential relationship. *Id.* A third justifies a trial court to impose a constructive trust where the defendant is unjustly enriched. See *Estate of Gulat,* 748 S.W.2d 79, 82 (Mo. App.1988).

■ There was evidence to support the trial court's findings that "Kohm did not retitle any assets of Violet E. Davis by use of the Durable Power of Attorney ...." and that "Kohm did not exert undue influence upon Violet D. Davis." Kohm testified he never used his power of attorney to transfer "one penny's worth" of Davis' assets to a joint account. Davis, herself, endorsed each of her assets to transfer ownership to joint accounts. The transfers occurred years prior to the guardianship, thus there was no possible finding of misconduct as guardian.

■ To prove undue influence, plaintiffs must prove defendant had coercive influence on the grantor which is greater than that of a regular family relationship. *Imgrund v. LaRue,* 851 S.W.2d at 44. Undue influence must consist of over-persuasion or coercion which substitutes the will of one

person for the free will of the other. *Barrett v. Flynn,* 728 S.W.2d 288, 292 (Mo.App.1987). Mere suspicion of undue influence is not sufficient. *Id.* Plaintiffs refer to Kohm's close involvement with Davis after her 1988 hospitalization, his presence when Davis transferred much of her assets into joint tenancies with Kohm, and an allegation Davis was senile when she transferred her assets as facts which sustain their burden of proof. The first two circumstances alone are insufficient to support a finding of undue influence. Merely because Kohm was involved with Davis and present at the transactions does not necessarily support a finding of undue influence.

Plaintiffs' theory of undue influence rests primarily on their unproven allegation Davis was incompetent at the time she made the transfers. The trial court found "[t]hat Violet E. Davis is presumed to have been competent prior to the adjudication of incompetence and disability made November 23, 1992, and [plaintiffs] have failed to bear their burden of proof of incompetence and disability at any time prior to said adjudication." There was evidence to support this finding. First, the retitling of assets occurred in October and November of 1988, four years before the November 23, 1992 adjudication of incompetence and disability. A finding of incompetency is prospective only in application and is inadmissible to show prior mental disability. *Masoner v. Bates County Nat. Bank,* 781 S.W.2d 235, 239 (Mo. App.1989). There is a presumption of sanity preceding adjudication with the burden of proof being on the party who seeks to show want of mental capacity. *Id.* Plaintiffs have not met their burden. Second, numerous bank employees testified at trial that Davis freely and voluntarily retitled her assets. Third, Davis' rational conduct in a contemporaneous will supports a finding she was competent. Fourth, prior to Kohm's petition seeking appointment of a guardian and conservator for Davis, plaintiffs showed very little interest in Davis and little concern for her well being. Their own conduct provides an available inference they did not believe her incompetent before October 16, 1992, when Davis lived alone, cooked her own meals, did her own laundry and prepared shopping lists.

Plaintiffs rely on testimony of Dr. Limpiphiphatn. They argue his opinion would support a finding Davis was incompetent when she retitled her assets. In October of 1988, while Davis was in the hospital for congestive heart failure, Dr. Limpiphiphatn diagnosed her as suffering from senility. He admitted, however, that his diagnosis was partially based on the opinions of Davis' nurses. A doctor may not give an opinion based upon the opinion of another doctor. *See Schwinegruber v. St. Louis Public Service Co.,* 241 S.W.2d 782, 787 (Mo.App.1951). He also admitted that while in the hospital Davis "was able to answer [his] questions and tell [him] how she feels [sic]." Dr. Limpiphiphatn's opinion was not compelling and was contradicted by contrary evidence.

When contradictory testimony is presented to the trial court, we will defer to the trial court who is in a better position to assess the credibility of witnesses. *Schneider v. Schneider,* 824 S.W.2d 942, 947 (Mo. App.1992). The evidence supported the trial court's finding that Davis was competent when she retitled her assets. Without a finding of incompetency, plaintiffs failed to meet their burden of proof that Kohm unduly influenced Davis. Mere suspicion of undue influence is not sufficient. *Barrett,* 728 S.W.2d at 292.

The plaintiffs also argue the overwhelming weight of uncontradicted evidence revealed Kohm committed a constructive fraud upon Davis by breaching a confidential and fiduciary relationship. The breach of a fiduciary duty or confidential relationship may be constructively fraudulent. Proof of actual fraud is not necessary for the imposition of a constructive trust. *White v. Mulvania,* 575 S.W.2d 184, 189 (Mo. banc 1978). The breach of a promise made during such a relationship will be considered constructively fraudulent because of the special reliance present. *Id.*

Plaintiffs argue the factual scenario of this case is analogous to that in *Miller v. Miller,* 872 S.W.2d 654 (Mo.App. S.D.1994). In *Miller,* a grandfather gave his grandson durable

power of attorney. Grandson used the durable power of attorney to deed grandfather's house to himself and his wife. No money or other property was given to grandfather in consideration of the deed. At trial, grandson explained that his reason for making the deed was because grandfather was going into a nursing home and grandson wanted to protect grandfather's home from grandson's father. Grandson testified that it was understood that the house was still his grandfather's house and that when grandfather decided to leave the nursing home, he would return to live in the house. The Southern District held that the evidence was clear, cogent and convincing that: (1) grandson's relationship to grandfather was as a fiduciary; and, (2) his action in transferring grandfather's house to himself was a breach of his fiduciary obligations. *Id.* at 659.

█ Because he was an attorney-in-fact, Kohm was in a fiduciary relationship with Davis. He was obligated to abide by the Durable Power of Attorney Law of Missouri, Sections 404.700 to 404.735 RSMo 1994. These sections obligate an attorney in fact to: (1) "act in the interest of the principal ..." Section 404.714.1 RSMo 1994; (2) "exercise the authority granted in a power of attorney with that degree of care that would be observed by a prudent person dealing with the property and conducting the affairs of another...." Section 404.714.1 RSMo 1994; (3) "keep the principal's property and accounts separate and distinct from all other property and accounts ..." Section 404.712.1 RSMo 1994; and, (4) not "create or change survivorship interests in the principal's property or in property in which the principal may have an interest; ..." Section 404.710.6(5) RSMo 1994.

█ Unlike the grandson in *Miller,* Kohm breached no duty owed to Davis. The uncontradicted evidence supported a finding that "Kohm did not retitle any assets of Violet E. Davis by use of the Durable Power of Attorney dated October 28, 1988." Davis, herself, endorsed each of her assets to transfer ownership to joint accounts. Kohm never used his power of attorney to transfer any of Davis' assets. Because Kohm did no relevant act under a power of attorney, he

breached no duty imposed by Sections 404.710 to 404.735 RSMo 1994 on attorneys in fact who *act* under a power of attorney.

█ Plaintiffs also argue the overwhelming weight of uncontradicted evidence revealed Kohm committed a constructive fraud upon Davis because he was unjustly enriched. Fraud or constructive fraud are not the only grounds for imposition of a constructive trust. *Estate of Gulat,* 748 S.W.2d at 81. In *Estate of Gulat,* we affirmed a trial court's imposition of a constructive trust because the defendant in that case was unjustly enriched. *Id.* at 82. In that case, decedent had a safe deposit box. He named defendant as co-renter of the box. Decedent placed $20,000 into the safe deposit box from the proceeds of a sale of his home. Defendant did not participate in the deposit. She did not open the box until after decedent died, when she removed the cash from the box. We held that the evidence fully supported: (1) the trial court's determination there was never any unity of possession of the contents of the box between decedent and defendant sufficient to create a joint tenancy in the cash; and, (2) the trial court's implicit conclusion decedent owned the $20,000 in the safe deposit box. *Id.* Defendant's "possession" was unsupported by any evidence of decedent's intent. Accordingly, that defendant's continued possession of the money, which was an asset of decedent's estate, unjustly enriched her to the detriment of decedent's other devisees. *Id.*

In contrast, Davis retitled her assets in a joint tenancy with the right of survivorship. Her actions support a finding of her intent on ownership. Plaintiffs argue Kohm's testimony at the 1992 guardianship hearing proved an opposite intent. They argued all the jointly titled assets actually belonged solely to Davis, and that his name was simply placed on them to facilitate his paying Davis' expenses should she be unable to do so herself. Plaintiffs' argument is faulty for several reasons. First, Kohm's intention was irrelevant and not binding on Davis. Second, most of the transfers were bank deposits. Section 362.470.1 RSMo 1994 provides:

When a deposit is made by any person in the name of the depositor and any one or

more other persons, whether minor or adult, as joint tenants or in form to be paid to any one or more of them, or the survivor or survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise, the deposit thereupon and any additions thereto made by any of these persons, upon the making thereof, shall become the property of these persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of such persons during his lifetime, or to any one of the survivors of them after the death of any one or more of them. The making of a deposit in such form, and the making of additions thereto, *in the absence of fraud or undue influence, shall be conclusive evidence* in any action or proceeding to which either the bank or trust company or any survivor is a party of the intention of all the parties to the account to vest title to the account and the additions thereto and all interest thereon in the survivor. . . . (Our emphasis.)

Each of the transfers of Davis' assets were signed by both Davis and Kohm "as joint tenants with right of survivorship" or as account holders "Violet E. Davis or Blane D. Kohm either or the survivor." Therefore, the bank transactions are governed by Section 362.470.1 RSMo 1994. The conclusive presumption that the accounts are joint tenancies applies.

A recent decision of the Western District of this court dealt with the conclusive presumption of joint tenancy under Section 362.470.1. *Braden v. Von Stuck,* 950 S.W.2d 489 (Mo.App.W.D.1997). The trial court had disregarded the conclusive presumption of joint tenancy and instead relied on a finding of decedent's intent in determining ownership of an account. The Western District reversed and held that once the presumption is established the intent of the decedent is irrelevant. The presumption, once established, can only be defeated by a finding of fraud, undue influence, mental incapacity or mistake. *Id.* at p. 494.

Similarly here, because the conclusive presumption of Section 362.470.1 RSMo 1994 applies, Davis' intent on bank transfers and Kohm's understanding of Davis' intent are irrelevant in determining the ownership of the assets. Furthermore, the presumption has not been defeated by evidence offered by plaintiffs. The evidence supported findings there was no fraud, undue influence, mental incapacity or mistake at the time of the retitling. Therefore, Kohm by Davis' act and design was a surviving joint tenant on the joint accounts. Because he had an ownership interest in the assets and because there is insufficient evidence of fraud, undue influence, mental incapacity or mistake, Kohm was not unjustly enriched.

▮▮▮▮ Plaintiffs also argue the trial court erred in granting judgment to Kohm and Bert on all counts when it found no agreement existed between Davis and Kohm regarding the handling of the jointly titled assets and concluded this was a basis to deny a constructive trust. In testamentary circumstances a constructive trust may be imposed when the named devisee either expressly promises or by silence implies that he will perform in accord with an agreement with grantor or testator. *Fix v. Fix,* 847 S.W.2d 762, 766 (Mo. banc 1993). Our Supreme Court has recognized the sometimes testamentary nature of joint accounts. *Id.* at 767; *In re Estate of LaGarce,* 487 S.W.2d 493, 501 (Mo. banc 1972). Essential to the establishment of a constructive trust in this case would be evidence to support a finding Davis retitled her assets *in reliance* on an agreement by Kohm, expressed or implied, to allow all of Davis' previously solely-owned assets to be probated upon her death. There was no evidence Davis retitled her assets in reliance on an agreement with Kohm or that she so intended. Her new will would control her probate distribution and she left the bulk of her estate to Kohm. She demonstrated her intent to transfer ownership of much of her separately owned assets to Kohm by her transfer of her assets to joint accounts. Her testamentary plan was consistent with a finding she did not retitle her assets relying on an implied promise by Kohm to allow those assets to be probated.

In their final point, plaintiffs argue the trial court erred in granting judgment to Kohm and Bert on all counts after finding they appropriately discharged their duties as Davis' guardian and conservator of her estate. Plaintiffs argue the trial court erred when it found "[t]hat Respondent Blane D. Kohm and Respondent John T. Bert have appropriately discharged their duties as Guardian of the Person and Conservator of the Estate, respectively, of Violet E. Davis, and the appointment of a Successor Guardian or a Successor Conservator is unwarranted."

As Davis' guardian, Kohm had the duty to "act in the best interest of the ward." Section 475.120.2 RSMo 1994. Plaintiffs argue Kohm's "decision to withhold consent to the retitling of all the jointly titled assets, in light of [his] influence over [Davis] when the assets were retitled and in light of [Davis's] physical and mental health at that time, is not in [Davis's] best interest." Because there was evidence which supported the trial court's findings that Kohm did not unduly influence Davis and that Davis was not incompetent at the time she retitled her assets, plaintiffs argument has no merit. Without a finding of undue influence, breach of a fiduciary relationship, unjust enrichment or breach of an implied agreement, Kohm had no duty as guardian to retitle the assets he had jointly held with Davis.

As conservator, Bert owed Davis: "a duty to use the degree of care, skill and prudence which an ordinarily prudent man uses in managing the property of, and conducting transactions on behalf of, others.... [and] a duty to act in the interest of the protectee and to avoid conflicts of interest which impair his ability so to act." Section 475.130.1 RSMo 1994. He also owed Davis a duty to "collect all debts due or becoming due to the protectee, ..." Section 475.130.4 RSMo 1994.

Plaintiffs argue that both Kohm and Bert have breached their duties and ignored a November 23, 1992 order of the competency hearing court. The November 23, 1992 "ORDER FREEZING ACCOUNTS UPON APPOINTMENT OF CONSERVATOR" held:

1. There are substantial personal assets which were not even listed as joint property on the "Application for Letters of Conservatorship / Guardianship" which are in fact the property of the ward / protectee although titled jointly with Blane Kohm.

2. The Conservator needs to immediately file a "Petition to Discover Assets" to protect the Estate of Violet E. Davis.

3. Until such time as the appropriate law suit to discover assets can be filed, it is necessary that the Court enter its Order freezing said assets until further Order.

Plaintiffs argue Kohm and Bert failed to comply with this order because they did not retitle the jointly held assets to Davis's name alone. The order did not order retransfer. It merely required Bert to immediately file a "Petition to Discover Assets." He did so on November 30, 1992. After filing the petition, Bert, with Kohm's cooperation, took possession of Davis's assets, including the jointly titled assets, subject to future litigation.

The evidence supported the trial court's finding Kohm and Bert have appropriately discharged their official duties.

We affirm.

AHRENS, P.J., and CRANE, J., concur.