**STATE of Missouri, Respondent,**

v.

**Anthony L. JONES, Appellant.**

**No. ED 74826.**

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 21, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied. Dec. 1, 1999.

Application for Transfer Denied Jan. 25, 2000.

414

Craig A. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Linda Lemke, Assistant Attorney General, Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Anthony L. Jones ("defendant"), appeals the judgment of St.

Charles County, after a jury convicted him of trespass in the first degree, section 569.140 RSMo,[1] attempted deviate sexual assault, sections 564.011 and 566.070 RSMo, and third degree assault, section 565.070 RSMo. We affirm.

The sufficiency of the evidence is not in dispute. Defendant and A.R. ("victim") dated periodically over a span of three years. The incident for which defendant was convicted occurred during this time.

On October 18, 1997, defendant went to victim's home to return her car. An argument ensued when victim received a telephone call from a previous boyfriend. The argument continued outside the house, at which point victim retreated into the house and locked the door. Later in the day, defendant removed the screen from a window and entered victim's house despite her objections. Defendant angrily asked victim about the previous boyfriend, to which she would not respond. Defendant proceeded to choke victim with his hands for about five minutes. He then held a kitchen knife to her neck and told her that if she did not tell him about her previous boyfriend, he would cut her. Defendant came after victim with his pants down, forcing her head towards his groin with one hand while holding the knife in the other, and told her to perform oral sex on him. After struggling with the victim and her cries for help, defendant stopped. Victim ran from the house and reported the incident to a police officer at a gas station across the street from her home. The officer confirmed that there were red marks around victim's neck and the screen to her window had been cut away.

The police arrested defendant, and Officer Ernest Sutton ("Sutton") was assigned to the case. Defendant waived his *Miranda*[2] rights and told Sutton that he had gone to victim's house to return her car and to use the telephone. Sutton relayed to defendant victim's account of what had transpired that day, including where she had said defendant had broken into her house, choked her, threatened her with a knife, and told her to perform oral sex. Defendant then clenched his fist and sunk his head down, stating he wanted to go back to his cell and had nothing to say. Sutton proceeded to ask defendant further questions to which there was no response. Sutton then took defendant to his cell.

After opening statements at trial, the presiding judge informed the parties K.R., who was a client of his a couple of years before he became a judge, was present in the courtroom. The parties confirmed she was the mother of victim. The judge told the parties he doubted he had ever met any of K. R.'s children, but believed she had two daughters that had gotten pregnant. Defendant asked for a mistrial. The court denied the motion, stating he had no recollection of ever meeting victim and his representation of K.R. had ceased at least three years prior to this trial.

The state called victim to testify. She testified to the events that occurred on the day of the incident. She also testified she maintained a relationship with defendant after the incident. She testified to accepting numerous collect telephone calls from defendant and writing him letters and cards while he was in jail. She also testified to resuming a sexual relationship with defendant after he was released from jail.

The state then called Sutton to testify. Defendant requested a mistrial during the direct examination of Sutton because of Sutton's identification of defendant as "the black male" wearing an "O.J. Simpson-type suit." The court denied the motion, but reprimanded Sutton in front of the jury and issued a cautionary instruction. The judge stated, "[t]he reference to the witness saying O.J. Simpson-type suit is way off ... It has no place in this court. I would ask you to completely disregard any

---

1. All statutory references are to RSMo 1994.

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

reference to that. It doesn't have anything to do with this case, thank you."

Additionally, defendant objected to the state's reference to battered women syndrome during closing argument as beyond the scope of evidence. The prosecutor stated, "Very frequently a woman who is abused, it is a psychological thing, she has an emotional tie to a man that abuses her." The court overruled the objection stating it believed the state was speaking in general terms and not referring to the evidence in the case.

After conviction, the court sentenced defendant to six months in the St. Charles County jail for trespass, five years in the Missouri Department of Corrections for attempted deviate sexual assault, and one year in the St. Charles County jail for assault, with the sentences to run concurrently.

Defendant raises four points on appeal. In his first point, defendant argues the trial court erred in denying his motion for a mistrial after the trial judge disclosed he had represented victim's mother three years prior to the trial from which this appeal stems. Defendant maintains the trial judge should have recused himself because his impartiality could reasonably have been questioned. We disagree.

■■■ "Our review must be based upon the objective facts of the record as we read it, from the standpoint of a reasonable and disinterested bystander, unacquainted with the personality, the integrity and the dedication of the judge." *State v. Lovelady*, 691 S.W.2d 364, 367 (Mo.App. W.D.1985). "A judge should only be disqualified if a reasonable person, giving due regard to the presumption of honesty and integrity, would find an appearance of impropriety and doubt the impartiality of the court." *State v. Whitfield*, 939 S.W.2d 361, 367 (Mo.banc 1997). Additionally, "[t]here is a presumption that a trial judge is impartial and has discretion to weigh his own bias. Appellant must demonstrate an abuse of

that discretion to overcome this presumption." *State v. Boulware*, 923 S.W.2d 402, 408 (Mo.App. W.D.1996) (citation omitted).

■■■ In the case at bar, defendant has failed to apprise this court of any abuse of discretion by the trial judge that is sufficient to overcome the presumption of impartiality. The trial judge's representation of victim's mother ceased at least three years before defendant's trial. The judge stated to the best of his knowledge he had never met victim. Moreover, the judge voluntarily introduced this information immediately after opening statements, eliminating any notions of impropriety. There is nothing on the record that casts doubt on the impartiality of the court, nor is there anything to indicate the trial judge abused his discretion by denying defendant's motion for a mistrial. A reasonable person would not find the appearance of impropriety and therefore recusal was unwarranted.

In his second point on appeal, defendant argues the trial court erred in overruling his objection to Sutton's testimony regarding defendant's silence during questioning, thereby resulting in a *Doyle* [3] violation. We disagree.

Further, defendant maintains that because the issue was properly preserved for appeal, the state must prove that the error was harmless beyond a reasonable doubt. The state concedes that it was improper to adduce specific evidence of defendant's invocation of his right to remain silent. Despite this concession, the state asserts this point was not properly objected to at the trial level and, therefore, it is reviewable, if at all, for plain error only.

■■■ The first issue is whether this point is properly preserved for appellate review. Generally, "[a] party on appeal is held to the specific objections presented to the trial court." *State v. Reed*, 971 S.W.2d 344, 348 (Mo.App. W.D.1998). In the context of *Doyle* violations that have been

---

3. See *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

preserved for appeal, "the state bears the burden of proving that a federal constitutional error was harmless beyond a reasonable doubt." *State v. Dexter*, 954 S.W.2d 332, 340 n. 1 (Mo.banc 1997). When the error is not preserved, appellant must show that plain error occurred, resulting in manifest injustice. *State v. Frazier*, 927 S.W.2d 378, 382 (Mo.App. W.D. 1996). However, the factors used in an analysis of a preserved error violation pursuant to the harmless-beyond-a-reasonabledoubt standard are the same as those used to determine whether a non-preserved violation is plain error resulting in manifest injustice. *Dexter*, 954 S.W.2d at 340 n. 1. Therefore, the analysis for *Doyle* violations is the same regardless of whether or not the issue was properly preserved for appeal. *Id.*

 "[T]his court has the discretion to review *Doyle* violations for plain error that affects substantial rights and constitutes a manifest injustice." *Id.* at 340. "The question is whether the evidence had a decisive effect on the jury." *Id.* To determine whether there was a decisive effect on the jury, the court must consider four factors. *Id.* The factors are: (1) whether the state made repeated *Doyle* violations, (2) whether the trial court made any curative effort, (3) whether the defendant's exculpatory evidence is transparently frivolous, and (4) whether the other evidence of the defendant's guilt is overwhelming. *Id.*

In considering the first factor, we note in *Dexter*, there were repeated violations, as the prosecutor introduced evidence of defendant's post-*Miranda* silence during closing argument and during direct, cross, and re-cross examination. *Id.* at 340–41. The jury was so affected by the prosecutor's constant references that during its deliberations, it specifically requested a police report, which had been admitted into evidence, that described the defendant's post-*Miranda* silence. *Id.* at 341.

 In the case at bar, the state introduced the evidence only on direct examination of Sutton. This testimony was limited to a few questions and answers. There was no mention of defendant's silence during any other portion of the trial. Unlike *Dexter*, this evidence was not introduced repeatedly to develop a theme to infer defendant's guilt by constantly referring to his post-*Miranda* silence. Therefore, there were not repeated *Doyle* violations.

In considering the second factor, we note in *Dexter*, the curative efforts by the trial court were minimal. *Id.* at 341. The trial court simply told the jury to disregard questions to the defendant relating to his post-*Miranda* silence. *Id.*

In the case at bar, the trial court did not make any curative effort. However, this may have been due to defendant's failure to object to the evidence on specific grounds. Additionally, as discussed above, the *Doyle* violations in this case were minimal. Therefore, the necessity for a curative effort by the trial court was less crucial.

In considering the third factor, we note in *Dexter*, the defendant produced evidence disputing whether he could have committed the crime with which he was charged. *Id.* Specifically, defendant presented evidence that he could not have committed the crime within the time frame shown. *Id.* Accordingly, the Missouri Supreme Court found his defense was not transparently frivolous. *Id.*

In the case at bar, unlike *Dexter*, the defendant produced no direct evidence explaining his actions surrounding the incident. Instead, the defendant relied on the fact that victim sent defendant cards and letters, and accepted his telephone calls while he was in jail, which does not indicate defendant could not have committed the crime. Therefore, defendant's exculpatory evidence was transparently frivolous.

In considering the fourth factor, we note in *Dexter*, the state failed to produce evidence that overwhelmingly pointed towards the defendant's guilt. *Id.* at 342. The court stated, "it cannot be said that 'if

[appellant] were tried one hundred times on this evidence, with or without [the detective's] testimony, [he] would be convicted one hundred times.'" *Id.* at 342–43 (quoting *State v. Smart,* 756 S.W.2d 578, 582 (Mo.App. W.D.1988)).

In the case at bar, an analysis of the fourth factor reveals the other evidence of defendant's guilt is overwhelming. Victim provided detailed testimony describing the incident. The red marks around victim's neck and the damaged window screen were corroborated by the police. The defendant locked himself in victim's home and had to be restrained by police officers as he was arrested. Defendant admitted being at victim's home the morning of the incident and stated he was angry with her. Thus, the evidence overwhelmingly points towards defendant's guilt.

Because of the limited number of *Doyle* violations, the lack of persuasive evidence offered by the defendant, and the overwhelming evidence offered by the state, we find the testimony of Sutton did not have a decisive effect on the jury. Therefore, this court finds the *Doyle* violation error did not affect defendant's substantial rights, and the error did not result in manifest injustice.

In his third point on appeal, defendant argues the trial court abused its discretion in overruling his objection when the state referred to battered woman syndrome in its closing argument. We disagree.

"Substantial latitude is allowed during closing argument, and the trial court is vested with broad discretion in determining when counsel has exceeded the permissible scope of argument." *State v. Kee,* 956 S.W.2d 298, 303 (Mo.App. W.D. 1997). "It may be permissible for a prosecutor to refer to facts that are not before the jury so long as those facts do not imply any special knowledge of evidence pointing to a defendant's guilt." *State v. Weathersby,* 935 S.W.2d 76, 79 (Mo.App. W.D.1996). "It is proper for counsel to argue to the jury matters of common knowledge." *State v. Lakaner,* 831 S.W.2d 769, 772 (Mo.App. S.D.1992). Even if closing argu-

ment is found improper, reversal is justified "only where the defendant demonstrates that the argument had a decisive effect on the jury's determination." *Kee,* 956 S.W.2d at 303. "In order to have a decisive effect, there must be a reasonable probability that, had the comments not been made, the verdict would have been different." *Id.* Additionally, "error which in a close case might call for a reversal may be disregarded as harmless when the evidence of guilt is strong." *State v. Degraffenreid,* 477 S.W.2d 57, 65 (Mo.banc 1972).

In the case at bar, the reference to battered woman syndrome was neither extensive, detailed, nor factual. The prosecutor stated, "Very frequently a woman who is abused, it is a psychological thing, she has an emotional tie to a man that abuses her." This statement was a reference to a matter of common knowledge and not an assertion of fact. This is evident from the fact during voir dire the prosecutor asked the venire panel if they were familiar with battered woman syndrome. Additionally, the statement wasn't offered to demonstrate defendant's guilt but rather was a comment in rebuttal to the defendant's reliance on exculpatory evidence, i.e., the fact victim continued her relationship with defendant after the incident. Even if the state's closing argument may have been objectionable, in the context of the overwhelming evidence of guilt, the comment alone lacked a sufficiently prejudicial impropriety to have had a decisive effect on the jury. Therefore, the court did not abuse its discretion.

In his final point on appeal, defendant argues the trial court abused its discretion in overruling defendant's request for a mistrial when Sutton identified defendant as the "black male" wearing an "O.J. Simpson-type suit." We disagree.

"Mistrial is a drastic remedy to be used only in the most extraordinary circumstances when there is a grievous error which cannot otherwise be remedied." *State v. Sanders,* 903 S.W.2d 234, 238 (Mo.App. E.D.1995). "A court's refus-

al to declare a mistrial is based on its discretion since the trial court is in the best position to determine the effect of the remark and what measures, if any, might be necessary to cure the effect." *State v. Brasher,* 867 S.W.2d 565, 569 (Mo.App. W.D.1993).

In this case, the court immediately condemned the remark, stating "that was completely and ultimately uncalled for" before defendant even gave any grounds for objection. The court further admonished the witness in the presence of the jury and instructed the jury to completely disregard any reference to the comment. The trial court was in the best position to determine whether the comment had any prejudicial effect on the jury. This court finds the trial court sufficiently remedied the effect *of the statement and did not abuse its discretion by refusing to declare a mistrial.*

Based on the foregoing, the judgment of the trial court is affirmed.

PAUL J. SIMON, J., and JAMES R. DOWD, J., concur.