**STATE of Missouri, Respondent,**

v.

**Stanley E. SMITH, Appellant.**

**No. WD 57697.**

Missouri Court of Appeals,
Western District.

Nov. 14, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 2000.

Application for Transfer Denied
Jan. 23, 2001.

J.C. Hambrick Jr., Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Stanley Smith was convicted of possession of a controlled substance under § 195.202 and manufacture and production of a controlled substance under § 195.211.[1] Because we find that the evidence was insufficient on both counts to support the convictions we reverse with directions that Smith be discharged.

On December 6, 1998, Kelly Shuttleworth, a member of the Buchanan County Drug Strike Force, was shopping at Wal–Mart when he saw two men purchasing lithium batteries and cold medicine. Shuttleworth believed one of the men to be Stanley Smith. After the men left the Wal–Mart, Shuttleworth followed them and telephoned their license plate number into his dispatcher. The license plate was traced to a car owned by Smith's parents. As it turned out, the man purchasing the items at Wal–Mart was not Smith but a man named Sam Latrelle.

A search warrant was obtained on December 7, 1998, for Smith's residence and the surrounding property. The house was on a farm owned by Smith's parents. Smith had lived on the farm for some ten years. His girlfriend had lived with him on the farm for an unknown period. The house was empty when the search was executed. Smith and Schultz were in St. Joseph, Mo., at the time the officers searched the premises.

In an outbuilding on the farm several items commonly used in methamphetamine production were found. In the kitchen

---

1. All further statutory references are to RSMo 1994, unless otherwise indicated.

police found more questionable but legal household items as well as containers of liquid. In Smith's bedroom, which he shared with Christine Schultz, the police found a spoon with methamphetamine residue on it, a razor blade with methamphetamine powder on it and pseudoephedrine. Officers arrested Smith in St. Joseph, Missouri, more than an hour away, before beginning the search. No illegal substances were found in Smith's possession at the time of the arrest. Subsequent to the search and Smith's arrest, officers realized that Smith was not the man in Wal–Mart purchasing the questionable products. Evidence at trial indicated that Sam Latrelle, Schultz's ex-husband, made the purchases.

 Smith raises six points on appeal; three deal with the issuance of the search warrant and two with closing argument by the prosecutor. Because resolution of Smith's remaining point is dispositive of the case we do not discuss the other issues. The state argues that Smith's point on appeal is defective for failure to comply with Rule 30.06 which requires a point relied on to (1) identify the trial court ruling being challenged, (2) state concisely the legal reasons for the claim of reversible error, and (3) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error. The Court of Appeals has no duty to look to the argument portion of a brief or scour the record to ascertain the basis and reason an appellant claims the trial court erred. *State v. Boyle,* 970 S.W.2d 835, 837 (Mo.App.1998). Abstract statements of law devoid of reference to any action or ruling of the trial court violate the rules of appellate procedure in criminal cases. *State v. Kuhlenberg,* 981 S.W.2d 617, 622 (Mo.App.1998).

Smith's point relied on states:

THE TRIAL COURT ERRED BY ALLOWING THE JURY TO CON-SIDER A CASE ON CONSTRUCTIVE POSSESSION WITHOUT ANY EVIDENCE SHOWING ANY EXCLUSIVE CONTROL, ACTUAL CONTROL, OR ANY CONNECTION OTHER THAN HIM HAVING SHARED A RESIDENCE, OF ANY ILLEGAL SUBSTANCE FOUND IN THE MISTAKEN SEARCH.

 The point lacks compliance with Rule 30.06 by failing to direct our attention to the action or ruling complained of and clearly stating the legal reasons for the alleged error. Nevertheless, we need not dismiss an appeal when the issues are clear. *State v. Nathan,* 992 S.W.2d 908, 909 (Mo.App.1999). In a criminal case it is preferable, if possible, to reach the merits of a case lest we punish the appellant for the shortcomings of his counsel. *State v.. Gilpin,* 954 S.W.2d 570, 580 (Mo.App. 1997). We do clearly ascertain from the argument portion of the brief and the transcript that Smith is complaining that there was insufficient evidence to support his conviction and that the court erred in not granting his motion for judgment of acquittal at the close of all the evidence.[2]

 We may, in addition, in our discretion, choose to exercise plain error review. Rule 30.20. Mere allegations of error and prejudice do not warrant plain error review unless there are substantial grounds for believing that manifest injustice has resulted from the error. *State v. Boyd,* 954 S.W.2d 602, 606 (Mo.App.1997). The state has the burden and must prove each and every element of a criminal case. The failure to do so demands that any conviction be reversed. *State v. Bromley,* 840 S.W.2d 288, 289 (Mo.App.1992). A conviction based on insufficient evidence results in a manifest injustice justifying plain error review. *State v. Fosdick,* 776 S.W.2d 54, 56 (Mo.App.1989).

---

**2.** Smith also made the same motion at the close of the state's evidence. We do not consider the sufficiency of the evidence at that stage as Smith elected to thereafter present evidence. *State v. Albarado,* 6 S.W.3d 197, 199 (Mo.App.1999).

■ To convict Smith for possession of methamphetamine, the state must prove two elements: (1) that Smith had conscious and intentional possession of the controlled substance, either actual or constructive, and (2) that he was aware of the presence and nature of the substance. *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). Both elements may be proved by circumstantial evidence. *Id.* Where the evidence does not show actual possession, the first element of the offense may be shown by constructive possession "when other facts buttress an inference of defendant's knowledge of the presence of the controlled substance." *Id.* at 588. At a minimum the state must establish that a defendant had access to and control over the premises where the substance was found. An inference of possession and control of the illegal substance arises where the defendant has *exclusive* control of the premises. *Id.* Where there is joint control of the premises, the state must present additional evidence showing the defendant had knowledge of the presence of the controlled substance and control over the illegal drugs. Mere presence of a controlled substance on premises owned or possessed by a defendant will not suffice to sustain a conviction for possession. *State v. Janson,* 964 S.W.2d 552, 554 (Mo.App. 1998).

■ In *State v. Wiley,* 522 S.W.2d 281, 292 (Mo. banc 1975), the Missouri Supreme Court stated:

Where a person is present on premises where drugs are found but does not have exclusive use or possession of the premises, it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submissible case is made. Additional factors are required. When the defendant is present on the premises and if there are additional independent factors showing his knowledge and control, then that is sufficient to withstand a motion for directed verdict. To justify a conviction in any case of possession it is necessary to prove that the accused knew of the presence of the forbidden substance and that the same was under his control. In the absence of incriminating circumstances no case is made.

Various additional incriminating circumstances have been held to raise an inference of knowledge and control in a case of joint possession of the premises: self-incriminating statements, *Id.* at 292–93; consciousness of guilt, *State v. Dreiling,* 830 S.W.2d 521, 524–525 (Mo.App.1992); routine access to the place where the controlled substance is found; the commingling of the controlled substance with a defendant's personal belongings, *State v. Steward,* 844 S.W.2d 31, 33 (Mo.App.1992); a great quantity of the illegal substance at the scene, *State v. Barber,* 635 S.W.2d 342, 344 (Mo.1982); the substance in public view and access by defendant, *State v. Kerfoot,* 675 S.W.2d 658, 661 (Mo.App. 1984). Where the defendant is not present at the scene, the circumstantial evidence sufficient to show constructive possession should be scrutinized even more closely to make certain that it points to the defendant and not just circularly to joint possession. Whether sufficient additional incriminating circumstances have been proved is determined by looking at the totality of the circumstances. *State v. Purlee,* 839 S.W.2d 584, 589 (Mo. banc 1992).

■ To convict Smith of the manufacturing charge the State must also prove that he had actual or constructive possession of the materials being used to manufacture the controlled substance. The Supreme Court has used the same standards of actual or constructive possession in manufacturing cases that is described above for possession cases. In *State v. Withrow,* 8 S.W.3d 75, 80 (Mo. banc 1999), the Court noted:

When the accused shares control over the premises, as here, further evidence is needed to connect him to the manufacturing process. The mere fact that the defendant is present on the premises where the manufacturing pro-

cess is occurring does not by itself make a submissible case. Moreover proximity to the contraband alone fails to prove ownership. There must be some incriminating evidence implying that the defendant knew of the presence of the manufacturing process, and that the materials or the manufacturing process was under his control.

*Id.* (internal citations omitted). We will, therefore, simultaneously consider whether there is sufficient evidence to prove Smith's knowledge of the presence of and his access to and control over the methamphetamine and the materials and equipment necessary to manufacture it.

 The state argues that the sheer quantity of drugs and drug paraphernalia found in and around Smith's home provide the additional incriminating evidence required in a joint possession case. In reviewing the evidence the court accepts as true all evidence favorable to the state, including favorable inferences that might be drawn therefrom, disregarding evidence to the contrary. *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998). Our review is only to determine whether the evidence would permit a reasonable juror to have found Smith guilty beyond a reasonable doubt. *Id.*

There was no one at the farm and residence when the police executed the search warrant on December 7, 1998. Authorities had not had the house under surveillance and did not know when Smith had last been there. A defense witness testified that Smith and Schultz had been at the house the night before. The same witness testified that he went by the house the morning of the search to meet Smith. Smith was not there but Latrelle and the van were. Smith and Schultz then returned in an auto. The witness left with them and testified that Smith never entered the house. Police had some information prior to the search that Latrelle and another man with a moving van might be at the house. Latrelle was identified as the man who had made the purchases at Wal–Mart the night before and as Schultz's ex-husband. At the time the search warrant was executed the police still had not realized that they had mistaken Latrelle for Smith the night before at Wal–Mart.

The state's evidence was conflicting as to whether a shop building near the house was locked. Inside the building authorities found an empty can of naphtha, a full can of naphtha, a chemical mask, ether, starting fluid, two electric hot plates, muriatic acid and a fire extinguisher. There was no testimony that any unusual amount of these items was found. Two containers of liquid were found but never tested. They also found 10 lithium battery strips and 3 packages of cold pills (pseudoephedrine). Outside the building they found a fire extinguisher and a plastic jug both giving off smells of anhydrous ammonia. There were also a number of 500–gallon farm tanks of anhydrous ammonia and the equipment for applying it to the surrounding farmland. In trash barrels outside the buildings they observed empty blister packs such as cold pills would be supplied in and several wrappers or parts of lithium batteries.

In the kitchen of the house authorities found a glass jar containing a brown liquid on the counter, a glass mug containing an unknown clear liquid and crystals in the freezer, 200 coffee filters, four pounds of Epsom salt, a container of Coleman fuel, a fire extinguisher, a can of acetone and a can of starting fluid. In a bedroom the police discovered a spoon with white powder residue, a digital scale, a razor blade with white powder residue and a blister pack of cold pills. The residue on the spoon and scale contained methamphetamine. There was no testimony as to the exact location in the bedroom where any of these items was found. There was no testimony that any of these items were mixed in with or near any of Smith's personal belongings; there was in fact no

testimony about any other personal belongings in the bedroom.[3] In a second bedroom, apparently used for storage, officers found a glass pipe and pocketknife with white powder residue and a contact lens case containing a white powder. Lab tests showed the powder in the lens case to be methamphetamine; the pipe and knife were not tested. Again there was no testimony about the location of any of these items in the room or whether there was any other personal property, particularly Smith's, in that room. A lab also tested four samples of liquid: one contained methamphetamine and three contained methamphetamine oil. Police found no lab and there was no testimony indicating how long any of the contraband might have been in the house. The State's evidence indicated, however, that the anhydrous ammonia found in the plastic bottle was of recent although undefined origin because it remained in liquid form.

In essence the State asks us to consider whether the quantity of methamphetamine and manufacturing components was so large and of such state and condition that a reasonable juror could believe that even though Smith had not been in the house for twenty-four hours before the search, while other persons had, that a reasonable juror could conclude *beyond a reasonable doubt* that Smith had constructively possessed the illegal drug and the manufacturing components. The evidence strongly suggests that Smith was involved with the production of methamphetamine and/or that his girlfriend was involved. The evidence also strongly suggests that Schultz's ex-husband, Latrelle, was also involved. Thus, either Smith was guilty of the crime charged or he was guilty of bad choices in his associates. Making bad choices in companions is not a crime. No one saw Smith with any of the substances or constituent elements. We do not know if any

were in a space that he uniquely controlled. We do not even know if any of his personal belongings were in the bedroom or storage room. There was no evidence whether he farmed the property or that he had the exclusive use of the outbuilding to the exclusion of others who might be working on the property.

Although the evidence is suggestive of Smith's guilt, the test the court is constitutionally obligated to follow is whether the evidence is sufficient beyond a reasonable doubt to show that Smith constructively possessed the illegal substances. Because proof of guilt requires a string of inferences and because the evidence does not negate a plausible possibility that another party or parties was involved in the possession and manufacture of methamphetamine without his participation, we conclude the verdict of guilt must be reversed. We do not find that the state made a sufficient showing of additional incriminating circumstances as is required by law. Because of our disposition, it is not necessary to consider Smith's other claims of error. The trial court erred in submitting the two counts to the jury. The cause is reversed and the defendant is ordered discharged.

PATRICIA BRECKENRIDGE, Judge, and JAMES M. SMART, Jr., Judge, concur.

---

**3.** The transcript indicates that a number of photographs of the premises and items seized were introduced as exhibits. The court was not provided any of those exhibits.