

# Missouri Court of Appeals
## Southern District
### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD33422 |
| | ) | |
| TORRANCE REED, | ) | **Filed: Mar. 29, 2016** |
| | ) | |
| Defendant-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

Honorable Fred W. Copeland, Judge

**AFFIRMED**

A jury found Torrance Reed ("Defendant") guilty of one count of possession of cocaine with intent to distribute ("Count I") and one count of possession of over five grams of marijuana with intent to distribute ("Count II"). *See* section 195.211.[1] The trial court received the jury's verdicts and subsequently sentenced Defendant as a prior drug offender to serve concurrent, 15-year terms in the Department of Corrections.

Defendant now timely appeals his convictions, claiming they must be reversed because: (1) the evidence adduced at trial was insufficient to prove that he possessed the drugs at issue and that he had any intention of distributing them; and (2) the trial court

---

[1] All statutory references are to RSMo Cum. Supp. 2012. All rule references are to Missouri Court Rules (2015).

plainly erred by failing to put a stop, *sua sponte*, to certain cross-examination by the prosecutor. Finding no merit in these claims, we affirm.

## Standard of Review

"Appellate review of sufficiency of the evidence is limited to whether the state has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." *State v. Hosier*, 454 S.W.3d 883, 898 (Mo. banc 2015). This court "does not reweigh the evidence but, rather, considers it in the light most favorable to the verdict and grants the state all reasonable inferences." *Id.* All evidence and inferences contrary to the verdict are disregarded. *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011). The following summary of the relevant facts is presented in accordance with these governing principles.

## Facts and Procedural Background

During early December 2012, Ryan Becker, an officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, applied for a warrant to search a residence located at 1928 Dunklin Street in Kennett ("the home" or "the house"). The resulting warrant authorized officers to search for "a black 40 caliber pistol and ammunition, notes, documents and receipts, and, paperwork reflecting" that Defendant resided in the home. Officers executed the warrant on the afternoon of December 7, 2012, and they discovered 2.67 grams of cocaine, 112.326 grams of marijuana, four digital scales, several sandwich bags with the corners removed, a marijuana grinder, and a .40 caliber pistol. Defendant, his girlfriend ("Girlfriend"), and Girlfriend's seven-year-old son all lived in the home, and Defendant and Girlfriend occupied the master bedroom. Defendant and Girlfriend had rented the home together, Defendant's name was on the lease, and Defendant did not reside

2

anywhere else. Although Defendant had been in the home on the morning of the search, no one was present when the home was searched later that day.

Girlfriend had loaned her Tahoe to Defendant so that he could pick Girlfriend's son up from school on the afternoon of the search. Before the search warrant was executed, Kennett Police Department Corporal Mark Dennis pulled Defendant over, detained him, and transported him to the home. Defendant's brother ("Brother") was the sole passenger in the Tahoe, a search of which led to the discovery of more than $1,700 in cash in the console of the vehicle. Brother never asked about the money or made any claim for it after the police located and seized it.

Inside the home, drugs and drug paraphernalia were spread throughout the master bedroom and living room. Three bags of cocaine and a bag of marijuana were found in a dresser drawer in the master bedroom, and a digital scale was on top of the dresser. Digital scales are commonly used to weigh small amounts of drugs for sale. A court pleading with Defendant's name on it was in the top dresser drawer, and an identification wristband with Defendant's name and picture on it was found in another dresser drawer. A .40 caliber pistol was on the headboard of the master bed. A grinder used to break coarse marijuana into a smoke-able powder was on the table next to the bed, and the grinder had marijuana in it. Girlfriend denied being aware of any cocaine in the home, and she testified that the marijuana did not belong to her. Defendant occasionally smoked marijuana, and he had used cocaine in the past.

Defendant's clothes and shoes were on the master bed, another pair of his shoes were on the bedroom floor, and more of his shoes, along with a purse that had nothing but marijuana in it, were in the master-bedroom closet. Another bag of marijuana was found on

3

the right side of the master-bedroom cabinet, along with a receipt in Defendant's name for payment of a cable and internet bill.

A box of one-dollar bills was found in the left side of the same cabinet. It is common to find cash in small bills where drugs are being sold as they are frequently used to make change for someone who is buying controlled substances. A receipt made out to Defendant dated three days before the search was found in the cabinet.

The officers also found Vita-Blend in the master bedroom. Vita-Blend is manufactured as a dietary supplement, but it is frequently added to cocaine to increase the weight of the product being sold as a means of increasing the seller's profit. A drug user, as opposed to a seller, does not commonly dilute their own cocaine with an agent like Vita-Blend. Several boxes of sandwich bags were in the master bedroom. Sandwich bags are frequently used to package controlled substances for sale. A user of narcotics will typically have one bag, but an individual who sells will usually have multiple bags.

Sandwich bags with the corners removed were located inside a trash bag in the kitchen. Drug distributors commonly place drugs in the corner of a sandwich bag, twist the corner to enclose the drugs, then remove the corner of the bag. This process leaves behind multiple plastic bags with their corners removed.

Marijuana was also located in the living room between the couch and a wall. A digital scale was underneath the loveseat in the living room. Yet another digital scale sat on a table in the living room. A cable television bill addressed to Defendant at the home's address was also on a table in the living room.

A criminalist from the Missouri Highway Patrol Crime Lab later confirmed that the substances found at the home were cocaine and marijuana with total weights of 2.67 grams and 112.326 grams, respectively.[2]

Defendant testified in his own defense. At the end of his direct examination, the following exchanged occurred:

[Defendant's counsel:] And you're telling the Court, that, what are you telling the Court about who owns those, and the jury about who owns those drugs?

[Defendant:] I don't know who owned those drugs. I mean, I know another guy that used to be over there too. So, and I know he sells drugs, so, I know there I, I know they ain't mine, I can't say whose it was, if it was the other man drugs or her drugs or whose, but I know it wasn't mine. I never possessed no drugs.

[Defendant's counsel:] I think that's all. Thank you, sir.

The State then started its cross-examination as follows:

Q. Never possessed no drugs, but I pled guilty to possession of cocaine, back in Pemiscot County back in 2002, didn't you?

A. No, 2005.

. . . .

Q. And, you said earlier that you had never possessed cocaine, other than back in 2005. What about November 3rd, 2009?

A. November the who?

Q. Third of 2009?

A. No, I ain't never possessed no cocaine.

---

[2] Marijuana was found in five separate locations in the home with weights of 1.25, 1.59, 1.96, 13.74, and 93.72 grams. The testimony does not relate each weight to a particular location, and the State failed to enter the criminalist's lab report into evidence. Although the three lightest amounts found are both individually and collectively less than 5 grams, as explained *infra*, sufficient evidence indicated that Defendant constructively possessed all of the marijuana found in the home.

Q. You weren't in possession of 85 grams of crack cocaine on that date?

A. Never. I ain't got any convictions or nothing.

Q. I didn't ask about convictions, I asked about possession?

A. No, I never did.

Q. And you didn't possess another 40 grams of crack cocaine of June 2nd, 2009?

A. No.

Q. Do you know who Jasmine Adaway is?

A. Yes.

Q. You were with her on that date, weren't you?

A. Yes.

Q. And, the police found approximately 80 grams of crack cocaine in your car that day, didn't they?

A. No, they didn't find nothing in my car.

Q. Okay. Well, she was in your car, wasn't she?

A. No, she was at the police station.

Q. But I'm saying when you all were stopped, she was in your car?

A. Yeah.

Q. On June 2nd, 2009, were you stopped with Henry Williams and your brother Marcus, there's another big bag of crack cocaine found in the car on that date too?

A. Yes, the person took that charge and he's back out on the street. He took his own charge, and I, I had nothing to do with that.

Q. Okay. But, so, you just around it a lot, not, not possessing?

A. Huh?

Q. I said, personally you're just a bad luck around it a lot and you don't possess any of it?

6

A. I mean, I grew up in the neighborhood where people do things, and you got good people in the neighborhood, and you got bad people, and you do it in between. So.

No objection was made to any of the prosecutor's questions.

**Analysis**

*Point I – Sufficient Evidence Supports Defendant's Convictions*

Defendant's first point alleges the trial court erred in overruling his motions for judgment of acquittal on both counts. While Defendant acknowledges that "many items indicative of the sale of narcotics, including substantial quantities of both marijuana and cocaine, were found throughout the house, particularly in the master bedroom[,]" he argues that this evidence was insufficient to prove that he possessed the drugs because he was not present at the home when the search was conducted, nothing illegal was found on his person when he was arrested, and no controlled substances or items indicative of drug sales were found in an area uniquely controlled by him.

In pertinent part, section 195.211 makes it unlawful for any person to possess a controlled substance with the intent to distribute it to another person. "To sustain the conviction[s], the State was required to prove (1) conscious and intentional possession of the controlled substance[s], either actual or constructive; (2) awareness of the presence and nature of the substance[s]; and (3) intent to distribute [them]." *State v. Gonzalez*, 108 S.W.3d 209, 211 (Mo. App. S.D. 2003).

> Proof of a defendant's knowledge often is supplied by circumstantial evidence of the acts and conduct of the defendant that permit an inference that he or she knew of the existence of the contraband. Proof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found. Exclusive control over the premises raises an inference of possession and control. However, when there is joint control over the premises where the drugs are discovered, some further evidence or admission must connect the accused with the illegal drugs.

7

*State v. Stover*, 388 S.W.3d 138, 147 (Mo. banc 2012) (internal quotations and citations omitted).

> A non-exhaustive list of such "further evidence" includes
>
> the presence of a large quantity of the substance coupled with ready access to the drugs; being in close proximity to drugs or drug paraphernalia in plain view of the police; nervousness exhibited during the search of the premises; the subject of the controversy in plain view; commingling of the controlled substance with the defendant's personal belongings; and the conduct and statements made by the accused.

*State v. Foulks*, 72 S.W.3d 322, 324-25 (Mo. App. S.D. 2002).

Routine access to the area where the controlled substance was kept may also provide the further evidence connecting the accused with the illegal drugs. *State v. Richardson*, 296 S.W.3d 21, 24 (Mo. App. S.D. 2009). We view the totality of the circumstances to determine if the required further incriminating evidence is present. *State v. Purlee*, 839 S.W.2d 584, 589 (Mo. banc 1992).

Here, there was sufficient evidence from which a reasonable fact finder could conclude beyond a reasonable doubt that Defendant constructively possessed cocaine and more than five grams of marijuana with the intent to distribute those substances.

First, there was sufficient evidence that Defendant had access to and control over the premises where the cocaine and marijuana were found. Girlfriend testified that Defendant was a permanent resident at the home at the time of the search, she and Defendant occupied the master bedroom of the home, and Defendant was in the home earlier in the day that the search took place. Defendant had mail delivered to him at the home's address, and his personal items were spread throughout the home. *See State v. McCall*, 412 S.W.3d 370, 374 (Mo. App. E.D. 2013) (finding access and control over premises where drugs were found in

8

common areas and bedrooms of a jointly-occupied home when the evidence showed that the home was defendant's primary address and his mail and personal belongings were in the home).

The State also provided sufficient evidence from which the jury could infer that Defendant was aware of the cocaine and marijuana in the home. Multiple pieces of drug-related paraphernalia sat in plain view throughout the home. In the master bedroom, a digital scale sat on top of the same dresser in which the cocaine, a bag of marijuana, and Defendant's court documents and identification bracelet were located, and a marijuana grinder sat on the bedside table. Defendant's access to the bedroom where drug paraphernalia sat in plain sight and his personal items being near each location of the drugs supports an inference that he was aware of the cocaine and marijuana in the home. *See id.* at 375; *State v. Garrett*, 765 S.W.2d 314, 316 (Mo. App. E.D. 1988). The contemporaneous possession of drug paraphernalia "is relevant to demonstrate knowing and intentional possession of the controlled substance for which one is charged." *Richardson*, 296 S.W.3d at 25 (citation omitted). Evidence was presented that Defendant used marijuana at the time of the search. This contemporaneous usage, combined with the fact that a marijuana grinder with marijuana inside it sat on Defendant's bedside table, further supports an inference that Defendant was aware of the marijuana the police found in his home. *See id.*

Yet additional evidence sufficiently connected Defendant to the drugs in his jointly-occupied residence. Defendant had routine access to each specific area where cocaine and marijuana were found. While Defendant and Girlfriend were co-tenants, Defendant's name was on the lease, and Girlfriend denied that the drugs were hers. Defendant left mail in the living room, slept in the master bedroom (where he kept shoes in the closet), and he kept

9

documents, receipts, and his identification in a dresser and cabinet in the master bedroom. Defendant's routine access to the home and each area where controlled substances were found is incriminating evidence that is not negated by the fact that Girlfriend had joint access to the same areas. *See State v. Millsap*, 244 S.W.3d 786, 789 (Mo. App. S.D. 2008) (involving joint control over an area in which the controlled substance was located). Defendant's personal belongings were found near the cocaine and marijuana. As to Count I, Defendant's identification bracelet and court documents were found in the same dresser as the cocaine. As to Count II, Defendant had shoes next to the marijuana in the closet, a receipt in his name next to marijuana in the cabinet, his identification bracelet and court documents in the same dresser as a bag of marijuana, and clothes and shoes near the marijuana on the bedside table.

Defendant principally relies on *State v. Tomes*, 329 S.W.3d 400 (Mo. App. E.D. 2010), and *State v. Smith*, 33 S.W.3d 648 (Mo. App. W.D. 2000), in alleging that the evidence here was insufficient to support either of his convictions. Because they are factually distinguishable, neither case governs our analysis.

In *Smith*, police found methamphetamine and multiple items related to the manufacture of methamphetamine throughout a home and in an outbuilding on the property. 33 S.W.3d at 651-52. The court considered, and then rejected, the proposition that a large quantity of methamphetamine and related paraphernalia alone might provide sufficient evidence that the defendant, who had not been at the home in twenty-four hours, had constructively possessed the items in the absence of any evidence that the defendant had routine access to the locations where the contraband was found or had any personal belongings in the same room as the contraband. *Id.* at 655.

10

In ***Tomes***, police found a small bag of methamphetamine in an open manicure case sitting on top of the defendant's dresser in a room that she shared with a former methamphetamine user, and that room had most recently been used by a different person who was reportedly under the influence of drugs at the time. 329 S.W.3d at 402-03.

Unlike the evidence found wanting in ***Smith*** and ***Tomes***, sufficient evidence supported the jury's conclusion that Defendant possessed both the marijuana and the cocaine with the intent to distribute it to others. Point I is denied.

*Point II – Plain Error Review Denied*

Defendant also claims the trial court plainly erred in failing to *sua sponte* declare a mistrial "or, at a minimum, [prohibit] the prosecutor from questioning [Defendant] during cross-examination about previous encounters with law enforcement that did not result in convictions" because he had not put his character at issue.

In requesting plain error review under Rule 30.20, Defendant acknowledges that no objection was made to this line of questioning at trial. "[A]n appellate court is not required to engage in plain error review; the decision whether to grant or deny such a request is left to the court's discretion." ***State v. Campbell***, 122 S.W.3d 736, 740 (Mo. App. S.D. 2004). "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review." ***State v. White***, 92 S.W.3d 183, 189 (Mo. App. W.D. 2002). Plain error is error that is evident, obvious, and clear, and we will reverse only if such error affects substantial rights and results in a miscarriage of justice or manifest injustice. ***State v. Ford***, 454 S.W.3d 407, 413 (Mo. App. E.D. 2015).

11

Moreover, we are especially wary of allegations that a trial court has erred in failing to *sua sponte* declare a mistrial in a criminal matter. ***State v. Hitchcock***, 329 S.W.3d 741, 749 (Mo. App. S.D. 2011). "[A] mistrial is a drastic remedy that should be used sparingly and granted only in extraordinary circumstances." ***State v. Tilley***, 104 S.W.3d 814, 819 (Mo. App. S.D. 2003). "To convict a trial court of an error, not put forth by the defendant (e.g., failure to declare a mistrial *sua sponte*), allows an accused to stand mute when incidents unfavorable to him or her occur during trial, gamble on the verdict, and then seek favorable results on appeal." ***Id.*** "This puts courts in an untenable position, and it is contrary to the principle of law that an appellate court will not convict a trial court of an error not put before it to decide." ***Id.*** at 819-20.

Here, Defendant testified on direct examination that he "never possessed no drugs." This voluntary assertion of his own good character allowed the prosecutor to properly test the validity of that assertion in his cross-examination of Defendant. Based on the absence of any facially substantial grounds to believe that a manifest injustice occurred, we decline plain-error review. *See **Campbell***, 122 S.W.3d at 740.

Defendant's second point is also denied, and his convictions are affirmed.

DON E. BURRELL, P.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. - CONCURS

GARY W. LYNCH, J. - CONCURS