

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. )     No. SD34082
)
DONALD CURTIS BILLINGS, )     **Filed: November 28, 2016**
)
    Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

#### Honorable Laura J. Johnson

### **AFFIRMED**

Donald Curtis Billings ("Defendant") appeals from his conviction for one count of driving while intoxicated. He claims (1) the trial court plainly erred in allowing the State to both adduce evidence and to argue about evidence that Defendant refused to answer questions after having been advised of his **_Miranda_**[1] rights and (2) the trial court plainly erred in allowing the State to both adduce evidence and to argue about evidence that Defendant requested an attorney after having been advised of his **_Miranda_** rights. Defendant's claims are without merit, and we affirm the trial court's judgment.

---

[1] **_Miranda v. Arizona_**, 384 U.S. 436 (1966).

## Factual and Procedural Background

On Friday, May 3, 2013, Defendant and his longtime friend, Joann Stum, ("Ms. Stum") drove to John's Frosted Mug. They arrived at the restaurant at approximately one p.m. and began drinking beer.

Mandi Rogers ("Ms. Rogers") got off work at approximately 11:30 p.m. that night. On her way home, she "noticed a car in front of [her] that had crossed the centerline a couple of times." When the car came to a sharp curve, the driver did not apply the brakes. The car left the roadway, landing in a ditch. Ms. Rogers stopped and positioned her truck so the headlights were shining on the car and then approached the car to make sure everyone was okay. She reached the car less than a minute after it crashed, and the car was not out of her sight as she approached. She saw no one get out of the car as she approached.

When she reached the car, Ms. Rogers found Defendant "slumped over the steering wheel." Ms. Stum was underneath the passenger-side dash board. Ms. Rogers said she would call for help, but Defendant insisted "that he didn't need help." Defendant tried to put the car in reverse while Ms. Rogers called for help. Ms. Rogers later testified that as the first responders arrived, she saw Defendant get out of the driver's seat and move to the back passenger-side seat. Defendant was unsteady on his feet and had to hold on to the car the whole way. He smelled of alcohol and repeatedly stated, "I wasn't the driver."

Shortly after midnight, Missouri Highway Patrol Trooper Kevin Waters ("Trooper Waters") arrived on the scene. He spoke with an EMT and Ms. Rogers and then approached Defendant who was in the back seat. As soon as he put his head in the car to speak with Defendant, Trooper Waters could smell alcohol.

Defendant had a glassy, staring look.  Trooper Waters asked Defendant to come to the patrol car to provide information.

The patrol car was approximately 50 yards away.  Defendant moved slowly and seemed unsure of his steps.  When Trooper Waters asked what had happened, Defendant responded he had not been driving.  Trooper Waters asked Defendant how much he had been drinking, and Defendant replied he did not know.  Defendant told Trooper Waters to call John's Frosted Mug and to ask for the bar tab.

Trooper Waters next asked Defendant to complete field sobriety tests.  Trooper Waters started with the alphabet test which Defendant was unable to complete successfully.  Defendant also showed indicators of intoxication on the counting test.  Defendant then refused to participate in the horizontal gaze nystagmus test or a preliminary breath test.  Trooper Waters placed Defendant under arrest, advised Defendant of his *Miranda* rights, and transported Defendant to jail.

At the jail, Trooper Waters explained the implied consent law to Defendant.  Defendant refused to provide a breath sample without an attorney present.

Defendant was charged with driving while intoxicated as a persistent offender.  Defendant was tried by a jury.  The jury found Defendant guilty of driving while intoxicated.  The trial court sentenced Defendant to four years in the Missouri Department of Corrections.  This appeal followed.

**Discussion**

Both of Defendant's points are governed by the same standard of review and the same legal principles. As Defendant neither objected to the evidence and arguments he challenges nor raised the claims in his motion for new trial, his claims are not preserved, and he requests plain error review. The following standard of review and general principles apply to both points.

"Plain error review is a two-step process." ***State v. Fincher***, 359 S.W.3d 549, 553 (Mo. App. W.D. 2012). In the first step, the appellate court examines the record to "determine whether there is, indeed, plain error, which is error that is 'evident, obvious, and clear.'" ***State v. Stites***, 266 S.W.3d 261, 266 (Mo. App. S.D. 2008) (quoting ***State v. Roper***, 136 S.W.3d 891, 900 (Mo. App. W.D. 2004)). Only where such error appears will the appellate court continue to the second step where it determines "whether a manifest injustice or a miscarriage of justice will result if the error is left uncorrected." ***Fincher***, 359 S.W.3d at 554.

"In ***Doyle v. Ohio***, 426 U.S. 610, 618 (1976), the United States Supreme Court held that the use for impeachment purposes of a defendant's silence, at the time of arrest and after receiving ***Miranda*** warnings, is fundamentally unfair and violates the due process clause of the Fourteenth Amendment." ***State v. Dexter***, 954 S.W.2d 332, 337 (Mo. banc 1997). Moreover, "[i]t is well established that the State may not use a defendant's post-arrest silence, or language representing silence, to incriminate the defendant." ***State v. Mason***, 420 S.W.3d 632, 638 (Mo. App. S.D. 2013) (quoting ***State v. Whitmore***, 948 S.W.2d 643, 647 (Mo. App. W.D. 1997)). Additionally, "'[s]ilence' extends to a defendant's request for counsel." ***Id.*** Thus, references to a defendant's post-

*Miranda* silence or request for an attorney have become known as ***Doyle*** violations.  However, not all testimony which mentions a defendant's silence or request for an attorney results in a ***Doyle*** violation.  For example, where the defendant initially waives his rights and speaks with the authorities, "the State is free to show the circumstances under which the interrogation was terminated as long as no inference of guilt can be reasonably drawn from the evidence."  ***Id.*** at 639.  With these principles in mind, each of Defendant's claims will be addressed separately.  However, for ease of analysis, we take Defendant's claims out of order.

### *Point Two:  Request for an Attorney*

In his second point, Defendant raises two related claims:  (1) that the trial court plainly erred in allowing the prosecutor to elicit testimony that Defendant requested an attorney after he had been advised of his ***Miranda*** rights and (2) that the trial court plainly erred in permitting the prosecutor to refer to that testimony during opening statement and closing argument.[2]  In this point, Defendant primarily attacks the testimony about the events surrounding his refusal to submit to a breath test.  This argument is without merit because, when viewed in context, Defendant's statements were a refusal to submit to the breath test and were admissible under Section 577.041.[3]

---

[2] A claim of error in the admission of evidence is a separate claim from a claim that the prosecutor's argument based on that evidence was error, so a point relied on raising both claims is multifarious.  *See* ***State v. McDaniel***, 236 S.W.3d 127, 133 (Mo. App. S.D. 2007).  "Points relied on containing multifarious claims violate Rule 84.04(d) and ordinarily are subject to dismissal." ***Day v. State***, 208 S.W.3d 294, 295 (Mo. App. S.D. 2006).  Nevertheless, this Court prefers to exercise its discretion to resolve appeals on their merits where, as here, the nature of the claim is readily understandable despite briefing deficiencies.  *See* ***State v. Leonard***, 490 S.W.3d 730, 736-37 (Mo. App. W.D. 2016).  All rule references are to Missouri Court Rules (2016).

[3] All statutory references are to RSMo Cum. Supp. (2013).

Evidence of a refusal to submit to a chemical test for blood alcohol content is admissible in a prosecution for driving while intoxicated under Section 577.010. § 577.041.1.[4] "A refusal to take a breath test within the meaning of § 577.041.1 occurs when the person under arrest is requested to take the test but declines to do so of his own volition." **State v. Foster**, 959 S.W.2d 143, 147 (Mo. App. S.D. 1998). "It is not necessary that the person use the words 'I refuse,' or that he refuse to blow into the machine." **Id.** "A refusal can also occur by remaining silent, or by making a qualified or conditional consent o[r] refusal." **Id.**; **Spradling v. Deimeke**, 528 S.W.2d 759, 765-66 (Mo. 1975) (holding that a driver had refused to take a breath test where the driver stated "he would not take the test without an attorney present").

Here, when the transaction is viewed as a whole, a reasonable fact-finder could have found that Defendant's request for an attorney was, in fact, merely a delay tactic used to avoid the breath test. Besides the evidence summarized above, the prosecution adduced evidence regarding Defendant's request for an attorney through the testimony of Trooper Waters. Trooper Waters explained he read Defendant the implied consent law off a form. Then the prosecutor asked

---

[4] The complete text of that subsection is:

> If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024, 565.060, or 565.082, or section 577.010 or 577.012. The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test. If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.

§ 577.041.1

6

about Defendant's refusal: "Do you recall, um, if he just flat out refused or how was it[?]" Trooper Waters replied, "No. He wanted to speak to his attorney. He wanted to talk to his lawyer." Trooper Waters then explained he allowed Defendant 20 minutes to contact an attorney as required by the implied consent law. When the 20 minutes was over, Trooper Waters testified, Defendant stated "he wanted an attorney there." Trooper Waters said he explained to Defendant that he was allowed only 20 minutes to attempt to contact an attorney and that it was probably not possible to get an attorney to the jail in 20 minutes. Trooper Waters also testified he explained that at the end of 20 minutes, Defendant would have to make a decision. Trooper Waters said that at the end of the 20 minutes, Defendant "basically just continued to say, I want a lawyer here" and "[t]hat he wouldn't do anything without a lawyer[.]" Trooper Waters testified he ultimately just finished "processing" Defendant.

That is, Defendant did not refuse by saying "I refuse." Instead, he refused by conditioning his refusal on the presence of an attorney. While Defendant had a right to consult an attorney under the statute, that right was a qualified right, and a suspect has no absolute right to have an attorney present when he or she completes a breath test. *See **Staggs v. Director of Revenue***, 223 S.W.3d 866, 873 (Mo. App. W.D. 2007) ("A driver has no *constitutional* right to speak with an attorney prior to deciding whether to take the test or to have an attorney present during the testing."). After being given an opportunity to contact a lawyer and being told he would have to decide at the end of 20 minutes about whether to submit to the test, Defendant continued to demand an attorney. Thus, in the context of the specific facts of this case, Defendant's statements were not a

7

protected request for an attorney, but admissible evidence of Defendant's refusal to submit to the breath test.  *See* ***Spradling***, 528 S.W.2d at 765-66.

The trial court did not err, plainly or otherwise, in admitting evidence or permitting argument that Defendant refused to submit to a breath test by conditioning his submission upon the presence of an attorney.  Point Two is denied.

### *Point One:  Defendant's Refusal to Answer Questions*

In his first point, Defendant claims the trial court plainly erred in allowing the State to elicit testimony that Defendant refused to answer questions after Trooper Waters advised him of his ***Miranda*** rights and in allowing the prosecutor to refer to that testimony during opening statement and closing argument.[5]  Defendant specifically targets Trooper Waters's testimony regarding what happened after Defendant refused to submit to a breath test.  Trooper Waters stated, "I think I attempted to ask him some questions.  He was not willing to answer questions, so he did not answer any of the questions."  Trooper Waters also testified he did not "push" the questions once Defendant indicated his unwillingness to cooperate.  While it is true Defendant had been advised of his ***Miranda*** rights and refused to answer questions, such testimony standing alone does not require reversal.  In that respect, this case is like ***State v. Howell***, 838 S.W.2d 158 (Mo. App. S.D. 1992).

In ***Howell***, the officer testified he took the defendant into custody, advised him of his rights, and the defendant made no statements.  ***Id.*** at 160.

---

[5] This point is multifarious for the same reason Point Two is multifarious.  *See* n.2, *supra*. Nevertheless, we exercise our discretion to review the claims because the arguments are readily understandable.  *See* ***Leonard***, 490 S.W.3d at 736-37.

This Court reasoned that the general rule did "not apply where a defendant did not stand mute in the face of an accusation because no accusation was made." *Id.* at 161. Here, similarly, Defendant was not asked any specific, incriminating questions. While the form Trooper Waters was supposed to fill out required him to ask "basic questions as far as the crash," Trooper Waters did not actually ask those questions. Instead, because Defendant was combative, Trooper Waters merely asked if Defendant "was willing to answer any questions." Defendant refused. Thus, like ***Howell***, "[t]his is not a case where an accused clams up in the face of a charge of guilt, made under circumstances calling imperatively for an admission or denial." *Id.* at 162 (quoting ***State v. Starks***, 459 S.W.2d 249, 252 (Mo. 1970)). The trial court did not err in failing to intervene, *sua sponte*, when the prosecutor questioned Trooper Waters about whether Defendant was willing to answer any questions.

The analysis is different for the State's argument about this evidence, however. The prosecutor mentioned the refusal to answer questions or to cooperate in opening statement. Then, again, in closing argument the prosecutor used the evidence of Defendant's refusal to answer questions to support the prosecution's theory of the case that Defendant's lack of cooperation showed Defendant was, in fact, guilty of the offense. At trial, the defense theory was that Defendant had not been the driver of the vehicle. To counter this theory, the prosecutor stated in opening statement that the evidence would show "the defendant refused, refused to cooperate, refused to answer questions adequately, and refused to give a sample." Then, during closing argument, the prosecutor closed the State's argument with these assertions:

9

Trooper told him, you get this amount of time, and then we have to make a decision about whether or not you're going to blow. He still says, I'm not going to blow; not going to do it.

He had every opportunity to cooperate, and all he did was continue to refuse. He didn't want to cooperate. He didn't want—at the jail the trooper told you he had a whole list of questions as part of his investigation, a part of his reports, that, you know, he asked people, will you answer some more of my questions.

He asked him, um, you know, certain things like what—what they had to eat that day. I mean, there's a varie—there's a whole page of questions. "Nope. I'm not answering any more of your questions."

Why not? Why not? I mean, I think that's one of the most important questions you guys can ask yourselves when you're going back there to deliberate. Why not? Why not cooperate? Why not answer any of these questions? Why not blow?

If he was so convinced he wasn't driving, why not do any of those things? I'll tell you why. Because he was driving and because he was intoxicated. And he knew that.

That is, the prosecutor's argument urged the jury to use the fact that Defendant invoked his right to remain silent to support an inference of guilt, which is a *Doyle* violation. *See* *State v. Wessel*, 993 S.W.2d 573, 576 (Mo. App. E.D. 1999).

The next question is whether these two violations, the brief mention in opening statement and the argument about lack of cooperation and refusal to answer questions raised in closing argument, caused a manifest injustice or a miscarriage of justice. *See* *Dexter*, 954 S.W.2d at 340. In the context of an alleged *Doyle* violation, "the factors used in an analysis of a preserved error violation pursuant to the harmless-beyond-a-reasonable[-]doubt standard are the same as those used to determine whether a non-preserved violation is plain error resulting in manifest injustice." *State v. Jones*, 7 S.W.3d 413, 418 (Mo.

10

App. E.D. 1999). The Court must consider: "(1) whether the state made repeated **Doyle** violations, (2) whether the trial court made any curative effort, (3) whether the defendant's exculpatory evidence is transparently frivolous, and (4) whether the other evidence of the defendant's guilt is overwhelming." **Id.**

Here, although Defendant argues there were multiple **Doyle** violations, as noted in our prior analysis regarding Point Two, there was no error in permitting evidence that Defendant answered no questions after being advised of his **Miranda** rights and there was no error in permitting evidence and argument that Defendant requested an attorney after being advised of his **Miranda** rights. The only **Doyle** violations, therefore, are in the prosecutor's opening statement and a brief mention of refusing to answer questions in closing argument. This factor weighs in favor of the State. *See* **Jones**, 7 S.W.3d at 418 (finding there were no repeated **Doyle** violations where the **Doyle** violation involved only "a few questions and answers").

Regarding the second factor, although the trial court undertook no curative efforts, Defendant did not object at any point during trial. "A court should rarely grant relief on an assertion of plain error as to matters contained within closing argument." **State v. Cornelious**, 258 S.W.3d 461, 467 (Mo. App. W.D. 2008). "In the absence of an objection and request for relief, the court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." **Id.** Had Defendant brought the issue to the trial court's attention, the trial court could well have taken action. The trial court was given no opportunity to remedy the situation. This factor weighs in favor of the State. *See* **Jones**, 7 S.W.3d at 418 (noting that

11

a trial court's failure to take curative action in response to a ***Doyle*** violation "may have been due to [the] defendant's failure to object to the evidence on specific grounds.").

The last two factors require examination of the evidence. First, this Court must determine if the defense was transparently frivolous. It was. The trial judge, who had the opportunity to view the evidence just as the jury did, said it best at sentencing when she told Defendant, "I, frankly, just don't believe for a moment that you weren't driving that car. . . . I found your defense to be incredible and unbelievable. And you were willing to place the blame of the incident on your friend to avoid taking the blame for yourself." The only evidence Defendant relied on to demonstrate he was not driving was that he did not own the car and that some witnesses saw him in the backseat of the car. This evidence is frivolous when viewed in light of Ms. Rogers's testimony.

Ms. Rogers's testimony, when combined with the ample evidence of Defendant's intoxication, also provides overwhelming evidence of Defendant's guilt. *See* ***State v. Frazier***, 927 S.W.2d 378, 382 (Mo. App. W.D. 1996) (finding no manifest injustice arising from a ***Doyle*** violation were the defendant's guilt of first degree tampering was otherwise clear because it was supported by evidence that someone saw the defendant driving the car shortly after it was stolen). Ms. Rogers witnessed the crash and found Defendant in the driver's seat of the vehicle moments later. She saw Defendant get out of the driver's seat and move to the back passenger seat. Defendant had apparently been drinking since early afternoon at John's Frosted Mug. Defendant smelled of alcohol, had glassy eyes and an unsteady gait, failed two field sobriety tests, and refused two others.

12

Finally, Defendant refused to submit to a chemical test for blood alcohol content. Defendant's arguments that the evidence was not overwhelming because Trooper Waters found Defendant in the backseat of the car, and Defendant did not own the car, simply ignore common sense. The defense was transparently frivolous, and there was overwhelming evidence to the contrary. There was no manifest injustice.

The trial court did not err, plainly or otherwise, in admitting testimony that Defendant refused to answer any questions after being advised of his *Miranda* rights. Even though the prosecutor's use of that evidence during opening statement and in closing argument violated *Doyle*, Defendant did not suffer manifest injustice or a miscarriage of justice because of those violations. Point Two is denied.

## Decision

The trial court's judgment is affirmed.


MARY W. SHEFFIELD, C.J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. – CONCURS

DON E. BURRELL, J. – CONCURS IN SEPARATE OPINION



# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,         )
                                  )
     Plaintiff-Respondent,     )
                                  )
v.                             )     No. SD34082
                                  )
DONALD CURTIS BILLINGS,   )     **Filed:  November 28, 2016**
                                  )
     Defendant-Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Laura J. Johnson

## OPINION CONCURRING IN RESULT

I agree that the judgment of the trial court should be affirmed, but I would affirm without engaging in plain-error review.

> Rule 30.20 is no panacea which a criminal defendant can use to obtain appellate review of any alleged error that is unpreserved.  "The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review."  *State v. White,* 92 S.W.3d 183, 189 (Mo.App.2002).  Rather, plain error is limited to "error that is evident, obvious and clear."  *Id.*  The proper parameters of plain error review are established by the text of Rule 30.20 itself.  It states, in pertinent part, that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."  *Id.* . . . [A]n appellate court is not required to engage in plain error review; the decision whether to grant or deny such a request is left to the court's

1

discretion. *State v. Thurston,* 104 S.W.3d 839, 841 (Mo.App.2003); *State v. Smith,* 33 S.W.3d 648, 652 (Mo.App.2000).

***State v. Campbell***, 122 S.W.3d 736, 739-40 (Mo. App. S.D. 2004)

Because no complaint whatsoever was voiced at trial about the peril now claimed so egregious as to have required unasked intervention by the trial court to put a stop to it -- and no resulting manifest injustice appears -- I would exercise our Rule 30.20[6] discretion to deny Defendant's request for plain-error review.

DON E. BURRELL, J. – CONCURRING IN RESULT OPINION AUTHOR

---

[6] Missouri Court Rules (2016).